THE STATE, EX REL. ORMET CORPORATION, APPELLEE, *v.*
INDUSTRIAL COMMISSION OF OHIO, APPELLANT, ET AL.

[Cite as State, ex rel. Ormet Corp., *v.* Indus. Comm. (1990),
54 Ohio St. 3d 102.]

(No. 89-1472—Submitted July 31, 1990—Decided October 17, 1990.)

*Vorys, Sater, Seymour & Pease,* *Russell P. Herrold, Jr.,* and *Bradley K. Sinnott,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Gerald Waterman,* for appellant.

*Per Curiam.* Although Commissioner Smith did not attend claimant's permanent total disability hearing or review any transcript or summary of the proceedings, he nonetheless voted on claimant's application for permanent total disability benefits. We must determine whether his participation violated due process. For the reasons to follow, we find that it did.

The parties concentrate on *Morgan* v. *United States* (1936), 298 U.S. 468, which arose from a Department of Agriculture ("USDA") inquiry under the Packers and Stockyards Act ("Act") into market agencies' rates for buying and selling livestock. In that case, in a lengthy transcribed hearing before an examiner, voluminous testimony and exhibits were introduced. Afterwards, an "acting" Secretary of Agriculture (a delegate of the Secretary) heard oral argument. At its conclusion, elaborate findings of fact were prepared by the USDA's Bureau of Animal Industry and forwarded to the Secretary of Agriculture. Sometime later, the Secretary signed a

rate order that was purportedly based on his "careful consideration of the entire record in this proceeding." *Id.* at 477.

Plaintiffs sought an injunction, alleging, *inter alia*, that they had not received the "full hearing" mandated by Section 310 of the Act. Specifically, they contended that the Secretary signed the order without having heard or read evidence presented at the hearing, and without having heard, read or considered plaintiffs' oral argument or briefs. The district court, however, struck these allegations.

On appeal, the United States Supreme Court found that the lower court erred by striking plaintiffs' allegations and remanded the cause for the court to address the allegations and determine whether plaintiffs received the "full hearing" that the Act required. The United States Supreme Court stressed that consideration of all evidence by the Secretary, as ultimate decision-maker, was imperative to the Act's "full hearing" requirement. The court wrote:

"* * * [T]he weight ascribed by the law to the findings—their conclusiveness when made within the sphere of the authority conferred—rests upon the assumption that the officer who makes the findings has addressed himself to the evidence and upon that evidence has conscientiously reached the conclusions which he deems it to justify. That duty cannot be performed by one who has not considered evidence or argument. It is not an impersonal obligation. It is a duty akin to that of a judge. The one who decides must hear." *Id.* at 481.

The phrase, "the one who decides must hear," summarizes appellee's argument. Appellee's reliance on *Morgan* raises three questions: (1) Does *Morgan* expound due process principles? (2) If so, what procedural safeguards are required? and (3) Did the commission in this case comply?

We note initially that *Morgan* was decided on statutory, not constitutional grounds. As the court stated:

"* * * [N]or is it necessary to go beyond the terms of the statute in order to consider the constitutional requirement of due process as to notice and hearing. For the statute itself demands a full hearing and the order is void if such a hearing was denied. * * *" *Id.* at 477-478.

Appellant contends that, unlike *Morgan*, no comparable statutory requirement for a "full hearing" exists for applications to determine permanent total disability. While we agree with appellant's observation, we reject its assertion that *Morgan* is thus inapplicable.

*Ohio Bell Tel. Co.* v. *Pub. Util. Comm. of Ohio* (1937), 301 U.S. 292, 304-305, discussed the procedural safeguards required of quasi-judicial administrative agencies:

"Regulatory commissions have been invested with broad powers within the sphere of duty assigned to them by law. Even in quasi-judicial proceedings their informed and expert judgment exacts and receives a proper deference from courts when it has been reached with due submission to constitutional restraints. * * * Indeed, much that they do within the realm of administrative discretion is exempt from supervision if those restraints have been obeyed. All the more insistent is the need, when power has been bestowed so freely, that the inexorable safeguard * * * of a fair and open hearing be maintained in its integrity. * * * The right to such a hearing is one of 'the rudiments of fair play' * * * assured to every litigant by the Fourteenth Amendment as a minimal requirement. * * *" (Citations omitted.)

These principles have been applied

equally to nonregulatory administrative agencies. See, *e.g., Goldberg* v. *Kelly* (1970), 397 U.S. 254; *State, ex. rel. Canter,* v. *Indus. Comm.* (1986), 28 Ohio St. 3d 377, 28 OBR 437, 504 N.E. 2d 26; *State, ex. rel. Finley,* v. *Dusty Drilling Co.* (1981), 2 Ohio App. 3d 323, 2 OBR 366, 441 N.E. 2d 1128. Thus, statutory procedural provisions aside, a requirement to conduct a "hearing" implies a "fair hearing."

*Ohio Bell* provokes a second response to appellant's claim that *Morgan* does not apply. The litigation in *Morgan* v. *United States* comprised four decisions of the United States Supreme Court: (1936), 298 U.S. 468 ("*Morgan I*"); (1938), 304 U.S. 1 ("*Morgan II*"); (1939), 307 U.S. 83 ("*Morgan III*"); and (1941), 313 U.S. 409 ("*Morgan IV*"). *Morgan II* equated *Ohio Bell's* "fair and open" hearing requirement with the "full hearing" directive in the Packers Act. *Id.* at 15. By expressly relying on *Ohio Bell, Morgan II* implies that the *Morgan* cases also announce a due process standard.

Others share this view. *Southern Garment Mfrs. Assn.* v. *Fleming* (C.A.D.C. 1941), 122 F. 2d 622, for example, speculated that *Morgan I* "may have determined that the requirements of a statutory full hearing coincided with those of due process and hence the discussion of one was the discussion of the other. * * *" *Id.* at 625. As another commentary aptly noted:

"* * * [T]he *Morgan* case has been interpreted by most courts as declaring a rule of due process. Indeed, where a statute does not by its terms deal with the question as to whether an officer who was not present when the evidence was taken may make or participate in a decision, it is difficult to differentiate for that purpose between a fair hearing as a matter of due process and one as a matter of statute."

Annotation (1951), 18 A.L.R. 2d 606, 607. See, also, *Ostrowski* v. *New York* (C.A. 2, 1979), 601 F. 2d 629; *Natl. Labor Relations Bd.* v. *Baldwin Locomotive Works* (C.A. 3, 1942), 128 F. 2d 39; *Riverside Press, Inc.* v. *Natl. Labor Relations Bd.* (C.A. 5, 1969), 415 F. 2d 281; *Pittsburgh S.S. Co.* v. *Natl. Labor Relations Bd.* (C.A. 6, 1948), 167 F. 2d 126; *S. Buchsbaum & Co.* v. *Fed. Trade Comm.* (C.A. 7, 1946), 153 F. 2d 85; *Natl. Labor Relations Bd.* v. *Allied Distr. Co.* (C.A. 10, 1961), 297 F. 2d 679.

We find that *Morgan's* principles apply even without an express statutory requirement for a "full" or "fair" hearing. Having approved *Morgan's* applicability here, we turn to the procedural safeguards required. Appellee urges us to construe narrowly the requirement that "the one who decides must hear," and argues that *Morgan I* is satisfied only by personal attendance at a hearing or review of a transcript. We disagree.

*Morgan I* anticipates more flexibility than appellee concedes. Chief Justice Hughes qualified his controversial admonition by also writing:

"This necessary rule does not preclude practicable administrative procedure in obtaining the aid of assistants in the department. Assistants may prosecute inquiries. Evidence may be taken by an examiner. Evidence thus taken may be sifted and analyzed by competent subordinates. Argument may be oral or written. The requirements are not technical. But there must be a hearing *in a substantial sense.* And to give the substance of hearing, which is for the purpose of making determinations upon evidence, the officer who makes the determination *must consider and appraise the evidence* which justifies them. * * *" (Emphasis added.) *Id.* at 481-482.

Thus, the *method* used is secondary

to the overall requirement that all evidence be considered and appraised.

*Morgan II* and *IV* reinforce this interpretation. In *Morgan II* the district court, pursuant to the United States Supreme Court's earlier order, inquired into the Secretary's knowledge of the evidence in controversy. The Secretary testified that he had not read the entire record, but stated that his order represented his independent conclusions derived from the findings of the Bureau of Animal Industry.

The United States Supreme Court held that these actions did not violate due process. Citing the Secretary's testimony as to the independent nature of his conclusions, the court held that there was "no occasion to discuss the extent to which the Secretary examined the evidence" and refused to invalidate the order on that basis. *Id.* at 18. Had it construed "he who decides must hear" literally, we suspect that it would have found the plaintiffs' argument more persuasive.

*Morgan IV* forcefully affirmed *Morgan II's* reasoning, holding:

"* * * He [the Secretary] was questioned at length regarding the process by which he reached the conclusions of his order, including the manner and extent of his study of the record and his consultation with subordinates. His testimony shows that he dealt with the enormous record in a manner not unlike the practice of judges in similar situations, and that he held various conferences with the examiner who heard the evidence. * * * But the short of the business is that the Secretary should never have been subjected to this examination. The proceeding before the Secretary 'has a quality resembling that of a judicial proceeding.' * * * Such an examination of a judge would be destructive of judicial responsibility. We have explicitly held in this very litigation that 'it was not the function of the court to probe the mental processes of the Secretary.' * * * Just as a judge cannot be subjected to such scrutiny, * * * so the integrity of the administrative process must be equally respected. * * *'' (Citations omitted.) *Id.* at 422.

*Morgan's* evolution was summarized in *Natl. Nutritional Foods Assn. v. Food & Drug Adm.* (C.A. 2, 1974), 491 F. 2d 1141. There, the plaintiffs alleged that an FDA commissioner had not considered all of the evidence prior to issuing a decision. In denying plaintiffs' motion to depose, the court rejected plaintiffs' reliance on *Morgan I*, holding:

"It is plain enough that if this motion had come before us in the period between the first *Morgan case*, * * * holding that in administrative proceedings 'The one who decides must hear' and that a court seized of a review proceeding must inquire whether he had, and the fourth and last appearance of the *Morgan* case in the Supreme Court, * * * we would have been obliged to grant it. But the life of this aspect of *Morgan I* was extremely brief. In *Morgan IV* Mr. Justice Frankfurter, writing for a Court unanimous on this point, took back most or all of what the first decision had given * * *.'' (Citations omitted.) *Id.* at 1141. See, also, *Yaretsky* v. *Blum* (C.A. 2, 1980), 629 F. 2d 817; *Guerrero* v. *New Jersey* (C.A. 3, 1981), 643 F. 2d 148; *Estate of Varian* v. *Commr. of Internal Revenue* (C.A. 9, 1968), 396 F. 2d 753, certiorari denied (1968), 393 U.S. 962.

Professor Davis in his treatise, Administrative Law (1 Ed. 1958), Section 11.03, offers an insightful discussion of *Morgan's* requirements:

"According to the opinion in the leading first Morgan case, the requirement is not that deciding officers must personally read the record but it is that

they must personally 'consider and appraise' the evidence. The Court declared: 'Evidence may be taken by an examiner. Evidence thus taken may be sifted and analyzed by competent subordinates.' Since the only purpose of sifting and analyzing of evidence by subordinates is to save the time of the deciding officers, this necessarily means that deciding officers may 'consider and appraise' the evidence by reading a summary or analysis prepared by subordinates. The Supreme Court thus did not require in the First Morgan case that deciding officers must read all the evidence or even that they must directly read any of it. The requirement has to do with personal understanding of the evidence, not with the mechanics by which the understanding is developed. In common practice, deciding officers develop their understanding of evidence not only through reports of subordinates but especially through summaries and explanations and briefs and oral arguments of parties."

Similarly, in *Bates* v. *Sponberg* (C.A. 6, 1976), 547 F. 2d 325, plaintiff, a tenured professor, made a constitutionally based challenge to his dismissal. After charges were instituted against him, a tape-recorded hearing was held before the Faculty Senate Grievance Committee ("committee"). At its conclusion, the committee prepared a report that contained factual findings and a statement indicating that an adequate cause for dismissal existed.

The report was submitted to the defendant, the university president, who then prepared and submitted to the Board of Regents ("board") a report that recommended the plaintiff's dismissal. The board denied the plaintiff's request for a hearing, and based on the committee's and the president's reports, dismissed plaintiff. The board did not read a transcript of the committee hearing.

Plaintiff alleged that the board's failure to review the record made before the committee violated due process. The Sixth Circuit Court of Appeals disagreed, stating:

"* * * [T]he crux of the issue, in terms of due process under the Fourteenth Amendment, is not whether the due process hearing to which Professor Bates may have been entitled was held in the presence of the authority having final responsibility to determine his discharge, but instead whether the hearing accorded him was meaningful. * * *" *Id.* at 322.

The court held that *Morgan* did not require " 'that deciding officers must personally read the record but * * * that they must personally "consider and appraise" the evidence.' " *Id.* It concluded:

"Measured by the standards of *Morgan*, as we interpret them, the Board of Regents' consideration and action upon the report of the Grievance Committee met the minimal requirements of due process. Nothing in the record here nor in the district judge's opinion suggests that the Grievance Committee's report was deficient, contained factual inaccuracies or did not fairly summarize the evidence before it. Bates was discharged because he refused to submit * * * [a contracted-for scientific] report, a fact which was never in dispute and which was even admitted specifically by him at the time he demanded his hearing. We think that the reports by the Committee and President Sponberg provided a sufficient basis for the Board of Regents to acquire a 'personal understanding' of the evidence supporting the charges against Bates." *Id.* at 333. See, also, *Utica Mut. Ins. Co.* v. *Vincent* (C.A. 2, 1967), 375 F. 2d 129, certiorari denied (1967), 389 U.S. 839; *Guerrero, supra;*

*DeRemer* v. *United States* (C.A. 8, 1965), 340 F. 2d 712.

These cases indicate that the decision-maker must, in *some meaningful manner*, consider evidence obtained at hearing. In the case before us, it is undisputed that, (1) Smith did not attend the hearing, (2) no transcript was taken, (3) no summary or report of the hearing was prepared, and (4) no other hearing or meeting occurred between Smith and the other commissioners concerning claimant's application. It is thus undisputed that Smith did not *in any manner* consider any evidence presented at the hearing.

The commission argues that Smith's failure to consider evidence obtained at the hearing is inconsequential, since he reviewed the claimant's claim file. The commission points to the presumption of regularity that attaches to commission proceedings. Within the context of the present discussion, however, we interpret "regularity" to require that an absent commissioner consider the evidence derived from a hearing in a meaningful way. This presumption is destroyed where the decision-maker admits that he did not consider any evidence from the hearing. The commission's contention that no meaningful evidence was

submitted at the hearing is equally unpersuasive since without a record of the proceedings, we cannot tell what transpired.

Finally, the commission asserts that administrative delay and inconvenience will follow any attempt to alter current commission hearing practices. Specifically, it cites its current practice of running two permanent total disability dockets concurrently with at least two commissioners present at each of two simultaneous hearings. The votes of nonattending members are obtained by then circulating the claim file. Appellant contends that affirmation of the appellate holding will jeopardize this practice.

A practice which violates due process cannot be excused because of mere administrative inconvenience. *Ohio Bell, supra.*

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES, WRIGHT, H. BROWN and RESNICK, JJ., concur.

DOUGLAS, J., concurs in judgment only.