THE STATE EX REL. YOUGHIOGHENY & OHIO COAL COMPANY
*v.* INDUSTRIAL COMMISSION OF OHIO ET AL.

[Cite as *State ex rel. Youghiogheny & Ohio Coal Co.
v. Indus. Comm.* (1992), 65 Ohio St.3d 351.]

(No. 92–939—Submitted November 10, 1992—Decided December 14, 1992.)

*Hanlon, Duff & Paleudis Co., L.P.A.,* and *Gerald P. Duff,* for relator.

*Lee I. Fisher,* Attorney General, and *Gloria Castrodale,* Assistant Attorney General, for respondents Industrial Commission and Bureau of Workers' Compensation.

*Larrimer & Larrimer* and *David Swanson,* for respondent Randalson.

*Per Curiam.* Relator issues four challenges to the commission's order, arguing that the commission: (1) lacked jurisdiction to consider claimant's second application; (2) violated *State ex rel. Ormet Corp. v. Indus. Comm.* (1990), 54 Ohio St.3d 102, 561 N.E.2d 920; (3) lacked "some evidence" to support its order; (4) violated *State ex rel. Noll v. Indus. Comm.* (1991), 57 Ohio St.3d 203, 567 N.E.2d 245. These claims fail.

Relator initially argues that a denial of permanent total disability compensation should preclude the commission from later awarding such compensation absent an affirmative showing by the claimant of new and changed circumstances. We find, however, that relator's reliance on *State ex rel. Firestone Tire & Rubber Co. v. Indus. Comm.* (1990), 49 Ohio St.3d 283, 551 N.E.2d 979; *State ex rel. Koonce v. Indus. Comm.* (1985), 18 Ohio St.3d 60, 18 OBR 93, 479 N.E.2d 876; *State ex rel. Manes v. Indus. Comm.* (1990), 52 Ohio St.3d 260, 557 N.E.2d 119; and *State ex rel. Casper v. McGraw Edison Serv.* (1989), 47 Ohio St.3d 113, 548 N.E.2d 231, however, is misplaced. *Casper* and *Manes* were confined to permanent partial and temporary total disability respectively. *Firestone* and *Koonce* involved permanent total disability, but said nothing about new and changed circumstances being a prerequisite to commission

consideration of a subsequent application for permanent total disability compensation after an initial denial. Relator's reliance on Ohio Adm.Code 4121–3–15(B)(1)(c), former IC/WC 21–15(B)(1)(c), is similarly unfounded since the provision involves form C–85–A claim-reactivation applications, not permanent total disability compensation applications.

Relator also maintains that the commission order violated *Ormet, supra,* since there is no evidence that Commissioner Colasurd reviewed the hearing transcript. This argument lacks merit as well.

Contrary to relator's representation, transcript review is not the exclusive method by which an absentee commissioner can satisfy a party's due process rights. Instead, "the decision-maker must, in *some meaningful manner,* consider evidence obtained at hearing." (Emphasis *sic.*) *Id.,* 54 Ohio St.3d at 107, 561 N.E.2d at 925. The standard has been satisfied here.

In a memorandum to claimant's Industrial Commission file, Commissioner Geltzer indicates that no new evidence was presented at the August 1, 1991 permanent total disability hearing. Commissioner Colasurd then reviewed claimant's files and prepared the following memorandum:

"These cases were originally heard by the Industrial Commission on November 19, 1990. At that time I was not a Member of the Industrial Commission. Since that time there has been considerable activity. The matter was then set for hearing by Mr. McAllister on August 1, 1991 without conferring with me and I was not available for that hearing. I have, however, reviewed this extensive record [in] both files. It has also been called to my attention pursuant to the memorandum of August 8, 1991 by Mr. Geltzer that no new evidence was submitted at the hearing of August 1. I vote to GRANT permanent total disability to the claimant pursuant to the review of both files. We have a 51 year old with a high school education shows [*sic*] has been employed as a coal miner for 14 or 15 years. He has had two industrial injuries, one to the low back which necessitated a laminectomy in 1991 and another to the neck which required an interbody fusion at C5–6 in 1985. Claimant also has vocational evaluations. In reviewing Dr. John Q. Brown's specialist report for the [Industrial Commission], dated May 21, 1988, he indicates a total of 50% in both claims for a combined effects of 75%. He indicates that there was [*sic*] less than satisfactory results for the low back surgery and also an unsuccessful result as far as the cervical area is concerned. This by itself would permit an award of PTD to the claimant. The rehabilitation evaluation summary of 4–6–90 indicates prognosis for rehabilitation as poor. The PCE attached to that report indicates sedentary or less activities. Further there is a vocational assessment dated May 14, 1991, Lynn S. Mark, indicates [from] total evaluation [that] it is extremely unlikely

claimant could obtain competitive employment. There were significant barriers to him obtaining employment. Claimant has a history of heavy manual work with no transferable skills to other occupations at a sedentary level. * * * "

This memorandum satisfactorily demonstrates that all relevant evidence was evaluated by Colasurd in a meaningful manner. There is thus no *Ormet* violation.

Turning to the evidentiary foundation on which the award was based, the commission relied on, among other evidence, the reports of Dr. John Q. Brown and rehabilitation counselor Lynn Mark. Dr. Brown clearly indicates that claimant is medically incapable of sustained remunerative employment, writing:

"It's my opinion this man would be unable to return to his former position of employment. It is permanent and he has reached maximum recovery. There would be no forms of sustained, remunerative employment that he could successfully engage in because he's unable to sit for any length of time. He's unable to walk for any distance and he is totally unable to do any lifting."

In an extensive report, rehabilitation counselor Mark ultimately concluded:

"Based upon a total evaluation of Mr. Randalson [claimant], it is extremely unlikely that he could obtain competitive employment. Significant barriers to obtaining employment are: residual functional capacity to perform sedentary work; impaired cognitive functioning due to use of medications; emotional instability; pain behaviors; medication reliance and refusal to participate in rehabilitation programs; and an employment history of heavy manual work with no transferable skills to other occupations at the sedentary work level.

"Vocational rehabilitation is not a feasible alternative for the above mentioned reasons."

These reports provide "some evidence"—as required by *State ex rel. Burley v. Coil Packing Inc.* (1987), 31 Ohio St.3d 18, 31 OBR 70, 508 N.E.2d 936—to support the commission's decision.

Turning finally to the alleged violation of *Noll, supra,* we note that in *Noll* we directed the commission "to prepare fact-specific orders which will be meaningful upon review." *Id.,* 57 Ohio St.3d at 206, 567 N.E.2d at 248. Ruling that boilerplate recitation of nonmedical disability factors would no longer suffice, we ordered the commission to henceforth:

"[S]pecifically state what evidence has been relied upon to reach its conclusion and, most important, briefly explain the basis of its decision." *Id.* at 206, 567 N.E.2d at 249.

In this case, the commission complied with *Noll* as follows:

"The claimant is 51 years old with a high school education and has a work history which includes heavy physical labor in a coal mine including utility man and buggy operator. Claimant has no additional special training or skills which would be transferable to other job titles. [He has] * * * no reemployment potential. The claimant's permanent partial impairment of 75%, as found by Dr. John Q. Brown, precludes him from performing any sustained remunerative employment."

For the reasons given above, the writ of mandamus is denied.

*Writ denied.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.