[This opinion has been published in *Ohio Official Reports* at 68 Ohio St.3d 329.]

THE STATE EX REL. OHIO BELL TELEPHONE COMPANY, APPELLANT, *v.*
INDUSTRIAL COMMISSION OF OHIO, APPELLEE.

[Cite as *State ex rel. Ohio Bell Tel. Co. v. Indus. Comm.*, 1994-Ohio-533.]

*Workers' compensation—Application for permanent total disability compensation—Injury-induced retirement not voluntary, when—Burden of establishing a lack of meaningful review by Industrial Commission to support a due process violation not met, when—Retroactive award of permanent total disability compensation not supported by evidence, when.*

(No. 92-2418—Submitted November 9, 1993—Decided February 16, 1994.)

APPEAL from the Court of Appeals for Franklin County, No. 91AP-1302.

———————————

{¶ 1} Appellee-claimant, John W. Factor, was injured in the course of and arising from his employment with appellant Ohio Bell Telephone Company ("Bell"). Among the conditions allowed was thrombophlebitis of both legs. At some point thereafter, claimant was switched to office duties. This reassignment was apparently permanent but it is unclear whether it was injury-induced. Claimant missed sporadic periods of work thereafter, the last being June 1, 1981 through June 28, 1981.

{¶ 2} On August 31, 1982, at age fifty-eight, claimant retired after thirty-four years with appellant. Six years later, claimant applied for both temporary total and permanent total disability compensation. A commission district hearing officer denied temporary total disability on October 19, 1988, ruling:

"This order is based upon a finding that the claimant voluntarily retired and removed himself from the work place as of August 31, 1982; and therefore * * * the claimant is no longer entitled [to] and eligible for such benefits after the date. * * *"

**{¶ 3}** No appeal followed.

**{¶ 4}** The commission heard claimant's application for compensation for permanent total disability on September 12, 1989. Among other medical evidence presented was that of attending physician, J. Kelly Brennan, who classified claimant as "completely and permanently disabled because of his recurrent episodes of thrombophlebitis and the progression of his venous insufficiency." The commission granted compensation for permanent total disability, writing:

"The reports of Doctors Brennan, Steiman, Hutchison, Bracken & Holbrook were reviewed and evaluated. This order is based particularly upon the reports of Doctors Steiman, Brennan and Holbrook, a consideration of the claimant's age, education, work history and other disability factors including physical, psychological and sociological, that are contained within the Statement of Facts prepared for the hearing on the instant Application, the evidence in the file and the evidence adduced at the hearing."

**{¶ 5}** Bell filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging, *inter alia*, that voluntary retirement *per se* barred compensation for permanent total disability. Bell argued that since claimant had not appealed the October 19, 1988 district hearing officer's determination that claimant had voluntarily retired, that judgment was final and foreclosed compensation for permanent total disability.

**{¶ 6}** The appellate referee rejected this res judicata claim, finding that the district hearing officer could not have properly evaluated the retirement question since *State ex rel. Rockwell Internatl. v. Indus. Comm.* (1988), 40 Ohio St.3d 44, 531 N.E.2d 678—a leading case on voluntary retirement—postdated the district hearing officer's order. The appellate court agreed and issued a writ ordering the commission to vacate its order and conduct further proceedings consistent with *Rockwell*. The appellate judgment was not appealed.

{¶ 7} On March 4, 1991, claimant's permanent total disability application was reheard by Commissioners Colasurd, McAllister, Mayfield and Fugate. Following the hearing, claimant's file was referred to the commission's legal advisor "for discussion with all the members of the Commission, then issue an order without further hearing." The next day, claimant's counsel sent two letters to the commission—one addressed to all members and the other specifically to Chairman Colasurd. The former urged the commission to reinstate permanent total disability compensation and reemphasized the evidence counsel deemed most favorable to claimant. Bell did not receive a copy of the letter at that time.

{¶ 8} On August 21, 1991, the commission again awarded compensation for permanent total disability. With Commissioners Colasurd, Mayfield and Geltzer voting for claimant, the commission wrote:

"It is now the order of the Commission that its previous order, dated 9-12-89, is reinstated and affirmed. * * * [T]he starting date for permanent total disability (8-1-86) is medically supported by reports of frequent hospitalizations at Mount Carmel East Hospital, commencing in 1980, 1981, 1985, and 1987, as set forth in a discharge summary, dated 11-12-87.

"It is the specific finding of the Commission that claimant's retirement, on or about 8-31-82, was voluntary, but was motivated by the disabilities arising from the allowed injuries in this claim. This finding is supported by the signed statement of Jim Rife, dated 9-8-90, which states, 'John accepted the retirement even though he was only 58 years old as a solution to his inability to do his job.' The finding is further supported by the claimant's oral testimony at the Commission hearing, dated 3-4-91, where upon questioning as to why he retired, the claimant testified that it became harder for him to perform his work functions because of his injury-related disabilities.

"It is further based upon medical reports of Drs. Brennan (6-27-88) and Bracken (2-21-89), but particularly the report of Dr. Brennan. It is noted that the

report of Dr. Brennan of 6-27-88 states, 'In view of the continuing progression of his symptomology, I think Mr. Factor could be considered completely and permanently disabled because of his recurrent episodes of thrombophlebitis and the progression of venous insufficiency.'

"It is the further finding of the Commission that this order is further based upon a consideration of claimant's age (67), education (12th grade), [and] work history (35 years PBX repairman) * * * ."

{¶ 9} Bell filed a second complaint in mandamus that focused primarily on the voluntary nature of claimant's retirement. Bell also alleged numerous procedural and evidentiary improprieties in the administrative process and the order itself. The appellate court rejected these arguments and denied the writ. Bell's motion for appellate reconsideration was subsequently denied.

{¶ 10} This cause is now before this court upon an appeal as of right.

_____

*Michael R. Oker*; *Porter, Wright, Morris & Arthur*, *Darrell R. Shepard* and *Christopher C. Russell*, for appellant.

*Lee I. Fisher*, Attorney General, and *Yolanda L. Barnes*, Assistant Attorney General, for appellee Industrial Commission.

_____

**Per Curiam.**

{¶ 11} Bell claims that the commission abused its discretion in (1) finding involuntary, *i.e.*, injury-induced, retirement, (2) the process by which permanent total disability was found, and (3) retroactively awarding compensation for permanent total disability. Upon review, we find that only the last claim has merit.

{¶ 12} The commission's order is initially confusing because it describes claimant's retirement as "voluntary." This characterization, however, refers only to the claimant's initiation of that act. The balance of the order makes it clear that the commission considered claimant's retirement to have been injury-induced. As

4

such, claimant's retirement was actually involuntary for compensation purposes, and does not bar permanent total disability compensation. *Rockwell*, *supra*.

{¶ 13} Bell contends that the character of claimant's retirement was conclusively decided in the unappealed October 19, 1988 order that found claimant's departure to have been voluntary. Citing *State ex rel. Crisp v. Indus. Comm.* (1992), 64 Ohio St.3d 507, 597 N.E.2d 119, Bell maintains that the issue is now *res judicata*, regardless of this court's intervening decision in *Rockwell*. However, by focusing exclusively on claimant's failure to appeal the October 19, 1988 order, Bell ignores its own failure to appeal the appellate court's determination that the retirement question was *not res judicata*. Bell, accordingly, cannot relitigate that final judgment.

{¶ 14} Procedurally, Bell contests (1) its lack of opportunity to respond to claimant's March 5, 1991 letter to the commission, (2) Commissioner Geltzer's voting participation, and (3) Executive Secretary Haddad's participation in the determination of permanent total disability. Bell's arguments are unpersuasive.

{¶ 15} Bell initially argues that claimant's failure to timely give Bell a copy of the March 5, 1991 letter deprived it of its due process right to respond. Bell relies heavily on *State ex rel. Owens-Illinois, Inc. v. Indus. Comm.* (1991), 61 Ohio St.3d 456, 575 N.E.2d 202, which held that due process demanded a chance to respond to newly submitted evidence—in that case, rehabilitation reports submitted after the permanent total disability hearing.

{¶ 16} In *Owens-Illinois*, the adverse party's ability to respond to the rehabilitation report was crucial because the report contained new information and conclusions. The controversial March 5, 1991 letter in this case, however, contained no new information. It merely reiterated evidence from the hearing that claimant regarded as most favorable—evidence that Bell could have responded to at hearing. Bell's argument accordingly fails.

**{¶ 17}** Bell next criticizes the appearance of an apparent "yes" vote by the commission's executive secretary, Philip Haddad.  Admittedly, it is unclear why a "yes" designation appears next to Haddad's signature.  Regardless of the reason, however, its presence is immaterial.

**{¶ 18}** Former R.C. 4121.36(F) provided that:

"All orders * * * and decisions of the commission shall contain the signatures of three of the five commissioners * * *."  Am. Sub. H.B. No. 222, 143 Ohio Laws, Part II, 3197, 3292.

**{¶ 19}** In this case, three of the five commissioners voted in claimant's favor, and the order contains each of their signatures.  Therefore, the decision was issued with the requisite commissioner support, rendering Haddad's signature harmless.

**{¶ 20}** Bell also objects to the voting participation of Commissioner Geltzer, who missed claimant's March 4, 1991 hearing on permanent total disability.  Bell accuses Geltzer of failing to meaningfully review the evidence, as *State ex rel. Ormet Corp. v. Indus. Comm.* (1990), 54 Ohio St.3d 102, 561 N.E.2d 920, requires.  Bell, however, does not substantiate that allegation.

**{¶ 21}** The commission does not have the burden of establishing compliance with *Ormet*; rather, Bell must prove noncompliance.  As *Ormet* observed, there is a "presumption of regularity that attaches to commission proceedings."  *Id.* at 107, 561 N.E.2d at 925.  In *Ormet*, that presumption was destroyed by undisputed evidence that (1) Commissioner Smith missed the permanent total disability hearing, (2) no hearing transcript was taken, (3) no summary or report of the hearing was prepared, and (4) no other hearing or meeting occurred between Smith and the other commissioners concerning claimant's application.

**{¶ 22}** In contrast, in the present case, there was (1) an audio tape of the hearing, (2) a posthearing case summary by Robert Robbins, the commission's legal

6

advisor, and (3) an apparent additional discussion with all the commissioners regarding claimant's permanent total disability application. Equally important, unlike *Ormet*, there is no stipulation that Geltzer did not review the evidence before rendering his decision. Bell has thus failed to sustain its burden of establishing a lack of meaningful review sufficient to support a due process violation.

{¶ 23} Bell's final complaint involves the commission's award of permanent total disability compensation retroactive to August 1, 1986—two years prior to claimant's application. While R.C. 4123.52 does permit a retroactive award, Bell persuasively claims that retroactivity is not supported by "some evidence."

{¶ 24} In selecting the date of onset, the commission relied on a November 12, 1987 discharge report from Mt. Carmel East Hospital, as well as claimant's hospitalization in 1980, 1981 and 1985, summarized in the 1987 report. This evidence, we find, does not corroborate an August 1, 1986 onset of permanent total disability for three reasons.

{¶ 25} The 1980 and 1981 summaries are not "some evidence" of permanent inability to work since claimant returned to work after both hospitalizations. The 1985 and 1987 summaries, on the other hand, do not clearly relate their respective hospitalizations to claimant's industrial injury. As noted in a later synopsis of the 1985 visit, claimant was admitted "with a pulmonary infiltrate and it was not certain whether this represented pneumonia or an embolus." Similarly, of the five diagnoses rendered at claimant's 1987 hospital discharge, three were clearly unrelated to claimant's industrial injury. The cited evidence does not, therefore, support a retroactive award of permanent total disability compensation.

{¶ 26} For these reasons, the portion of the appellate judgment approving the retroactive permanent total disability award is reversed. The balance of the judgment is affirmed.

*Judgment reversed in part*

*and affirmed in part.*

MOYER, C.J., A.W. SWEENEY, DOUGLAS, WRIGHT and PFEIFER, JJ., concur.

RESNICK and F.E. SWEENEY, JJ., concur in part and dissent in part.

---

**ALICE ROBIE RESNICK, J., concurring in part and dissenting in part.**

{¶ 27} With the exception of that portion of the majority opinion dealing with the retroactive award of compensation for permanent total disability, I concur in the majority opinion.

{¶ 28} The record demonstrates that the commission based its award of permanent total disability particularly upon the report of Dr. Brennan, who stated: "In view of the continuing progression of his symptomology, I think Mr. Factor could be considered completely and permanently disabled because of his recurrent episodes of thrombophlebitis and the progression of venous insufficiency."

{¶ 29} Additionally in support of the order for the starting date of August 1, 1986 for the award, the commission referred to evidence of frequent hospitalizations of claimant at Mt. Carmel East during 1980, 1981, 1985 and 1987 as set forth in a discharge summary dated November 12, 1987. Even if some of the hospital confinements were excluded from consideration, taking the remaining hospitalizations into account, in conjunction with the report of Dr. Brennan of June 27, 1988, there is certainly some evidence that claimant was permanently and totally disabled as of August 1, 1986. Moreover, the commission took into consideration the factors set forth in *State ex rel. Stephenson v. Indus. Comm.* (1987), 31 Ohio St. 3d 167, 31 OBR 369, 509 N.E.2d 946, in concluding that claimant was unable to engage in sustained remunerative employment after August 1, 1986. In view of the fact that there is some evidence in the record to support the commission's finding, there was no abuse of discretion and a court should not overturn the decision of the commission. I would affirm the judgment of the court of appeals in its entirety.

F.E. SWEENEY, J., concurs in the foregoing opinion.

_____