THE STATE EX REL. OHIO BELL TELEPHONE COMPANY, APPELLANT,
*v.* INDUSTRIAL COMMISSION OF OHIO, APPELLEE.

[Cite as *State ex rel. Ohio Bell Tel. Co. v. Indus.
Comm.* (1994), 68 Ohio St.3d 329.]

(No. 92–2418—Submitted November 9, 1993—Decided February 16, 1994.)

*Michael R. Oker; Porter, Wright, Morris & Arthur, Darrell R. Shepard* and *Christopher C. Russell,* for appellant.

*Lee I. Fisher,* Attorney General, and *Yolanda L. Barnes,* Assistant Attorney General, for appellee Industrial Commission.

---

*Per Curiam.* Bell claims that the commission abused its discretion in (1) finding involuntary, *i.e.,* injury-induced, retirement, (2) the process by which permanent total disability was found, and (3) retroactively awarding compensation for permanent total disability. Upon review, we find that only the last claim has merit.

The commission's order is initially confusing because it describes claimant's retirement as "voluntary." This characterization, however, refers only to the claimant's initiation of that act. The balance of the order makes it clear that the commission considered claimant's retirement to have been injury-induced. As such, claimant's retirement was actually involuntary for compensation purposes, and does not bar permanent total disability compensation. *Rockwell, supra.*

Bell contends that the character of claimant's retirement was conclusively decided in the unappealed October 19, 1988 order that found claimant's departure to have been voluntary. Citing *State ex rel. Crisp v. Indus. Comm.* (1992), 64

Ohio St.3d 507, 597 N.E.2d 119, Bell maintains that the issue is now *res judicata*, regardless of this court's intervening decision in *Rockwell*. However, by focusing exclusively on claimant's failure to appeal the October 19, 1988 order, Bell ignores its own failure to appeal the appellate court's determination that the retirement question was *not res judicata*. Bell, accordingly, cannot relitigate that final judgment.

Procedurally, Bell contests (1) its lack of opportunity to respond to claimant's March 5, 1991 letter to the commission, (2) Commissioner Geltzer's voting participation, and (3) Executive Secretary Haddad's participation in the determination of permanent total disability. Bell's arguments are unpersuasive.

Bell initially argues that claimant's failure to timely give Bell a copy of the March 5, 1991 letter deprived it of its due process right to respond. Bell relies heavily on *State ex rel. Owens–Illinois, Inc. v. Indus. Comm.* (1991), 61 Ohio St.3d 456, 575 N.E.2d 202, which held that due process demanded a chance to respond to newly submitted evidence—in that case, rehabilitation reports submitted *after* the permanent total disability hearing.

In *Owens–Illinois*, the adverse party's ability to respond to the rehabilitation report was crucial because the report contained new information and conclusions. The controversial March 5, 1991 letter in this case, however, contained no new information. It merely reiterated evidence from the hearing that claimant regarded as most favorable—evidence that Bell could have responded to at hearing. Bell's argument accordingly fails.

Bell next criticizes the appearance of an apparent "yes" vote by the commission's executive secretary, Philip Haddad. Admittedly, it is unclear why a "yes" designation appears next to Haddad's signature. Regardless of the reason, however, its presence is immaterial.

Former R.C. 4121.36(F) provided that:

"All orders * * * and decisions of the commission shall contain the signatures of three of the five commissioners * * *." Am.Sub.H.B. No. 222, 143 Ohio Laws, Part II, 3197, 3292.

In this case, three of the five commissioners voted in claimant's favor, and the order contains each of their signatures. Therefore, the decision was issued with the requisite commissioner support, rendering Haddad's signature harmless.

Bell also objects to the voting participation of Commissioner Geltzer, who missed claimant's March 4, 1991 hearing on permanent total disability. Bell accuses Geltzer of failing to meaningfully review the evidence, as *State ex rel. Ormet Corp. v. Indus. Comm.* (1990), 54 Ohio St.3d 102, 561 N.E.2d 920, requires. Bell, however, does not substantiate that allegation.

The commission does not have the burden of establishing compliance with *Ormet;* rather, Bell must prove noncompliance. As *Ormet* observed, there is a "presumption of regularity that attaches to commission proceedings." *Id.* at 107, 561 N.E.2d at 925. In *Ormet,* that presumption was destroyed by undisputed evidence that (1) Commissioner Smith missed the permanent total disability hearing, (2) no hearing transcript was taken, (3) no summary or report of the hearing was prepared, and (4) no other hearing or meeting occurred between Smith and the other commissioners concerning claimant's application.

In contrast, in the present case, there was (1) an audio tape of the hearing, (2) a posthearing case summary by Robert Robbins, the commission's legal advisor, and (3) an apparent additional discussion with all the commissioners regarding claimant's permanent total disability application. Equally important, unlike *Ormet,* there is no stipulation that Geltzer did not review the evidence before rendering his decision. Bell has thus failed to sustain its burden of establishing a lack of meaningful review sufficient to support a due process violation.

Bell's final complaint involves the commission's award of permanent total disability compensation retroactive to August 1, 1986—two years prior to claimant's application. While R.C. 4123.52 does permit a retroactive award, Bell persuasively claims that retroactivity is not supported by "some evidence."

In selecting the date of onset, the commission relied on a November 12, 1987 discharge report from Mt. Carmel East Hospital, as well as claimant's hospitalization in 1980, 1981 and 1985, summarized in the 1987 report. This evidence, we find, does not corroborate an August 1, 1986 onset of permanent total disability for three reasons.

The 1980 and 1981 summaries are not "some evidence" of permanent inability to work since claimant returned to work after both hospitalizations. The 1985 and 1987 summaries, on the other hand, do not clearly relate their respective hospitalizations to claimant's industrial injury. As noted in a later synopsis of the 1985 visit, claimant was admitted "with a pulmonary infiltrate and it was not certain whether this represented pneumonia or an embolus." Similarly, of the five diagnoses rendered at claimant's 1987 hospital discharge, three were clearly unrelated to claimant's industrial injury. The cited evidence does not, therefore, support a retroactive award of permanent total disability compensation.

For these reasons, the portion of the appellate judgment approving the retroactive permanent total disability award is reversed. The balance of the judgment is affirmed.

*Judgment reversed in part*
*and affirmed in part.*

Moyer, C.J., A.W. Sweeney, Douglas, Wright and Pfeifer, JJ., concur.

Resnick and F.E. Sweeney, JJ., concur in part and dissent in part.

Alice Robie Resnick, J., concurring in part and dissenting in part. With the exception of that portion of the majority opinion dealing with the retroactive award of compensation for permanent total disability, I concur in the majority opinion.

The record demonstrates that the commission based its award of permanent total disability particularly upon the report of Dr. Brennan, who stated: "In view of the continuing progression of his symptomology, I think Mr. Factor could be considered completely and permanently disabled because of his recurrent episodes of thrombophlebitis and the progression of venous insufficiency."

Additionally in support of the order for the starting date of August 1, 1986 for the award, the commission referred to evidence of frequent hospitalizations of claimant at Mt. Carmel East during 1980, 1981, 1985 and 1987 as set forth in a discharge summary dated November 12, 1987. Even if some of the hospital confinements were excluded from consideration, taking the remaining hospitalizations into account, in conjunction with the report of Dr. Brennan of June 27, 1988, there is certainly some evidence that claimant was permanently and totally disabled as of August 1, 1986. Moreover, the commission took into consideration the factors set forth in *State ex rel. Stephenson v. Indus. Comm.* (1987), 31 Ohio St.3d 167, 31 OBR 369, 509 N.E.2d 946, in concluding that claimant was unable to engage in sustained remunerative employment after August 1, 1986. In view of the fact that there is some evidence in the record to support the commission's finding, there was no abuse of discretion and a court should not overturn the decision of the commission. I would affirm the judgment of the court of appeals in its entirety.

F.E. Sweeney, J., concurs in the foregoing opinion.