OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Deborah J. Barrett, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

The State ex rel. First National Supermarkets, Inc., Appellant, v. Industrial Commission of Ohio et al., Appellees.
[Cite as State ex rel. First Natl. Supermarkets, Inc. v. Indus. Comm. (1994),      Ohio St.3d      .]
Workers' compensation -- Permanent total disability award -- Industrial Commission's order vacated for lack of "some evidence," when -- Termination of handicap reimbursement not an abuse of discretion, when.
(No. 93-1891 -- Submitted August 17, 1994 -- Decided October 19, 1994.)
Appeal from the Court of Appeals for Franklin County, No. 92AP-253.

It is undisputed that claimant, Ella L. Walton, suffered from arthritis before sustaining any of her three industrial injuries with appellant First National Supermarkets, Inc. ("FNS"), her self-insured employer. Pursuant to R.C. 4123.343, FNS, in 1983, was awarded a twenty-percent handicap reimbursement for that condition in claim No. 574182-22. In 1989, three years after her last injury, claimant moved appellee Industrial Commission for permanent total disability compensation. Among other evidence was the report of Dr. W. Jerry McCloud, who wrote:

"Claim allowed for left lumbar myofascitis and lumbar strain with a pre-existing arthritis. * * *

"* * * It is important to note that her right knee claim is allowed for pre-existing arthritis * * *.

"* * *

"In summary, this claimant does have two sources of loss of function. One is related to loss of lumbar reserve, and the second to her right knee. I do feel that her historical representation of her problems in regard to both areas is typical of one describing discomfort from arthritic changes. I think that she would have restrictions against any activity that was done in the standing or ambulatory position, and this would include kneeling or bending or going up or down steps or stairs or incline[d] planes. She would also have restrictions against repetitive bending or lifting of objects whose weight would exceed an estimated 10 pounds. In my impression, the

only thing within her capabilities would be sedentary activities done while sitting and even then there would be restrictions against uninterrupted intervals of sitting or standing or ambulating that would exceed an estimated two hours. This is because of a diagnosis of osteoarthritis, and I think this is progressive. * * *

"It is my opinion that the weight of the medical evidence would indicate that this claimant should be considered permanently and totally impaired. I do not think she would be capable of sustained remunerative activities in the future. * * * It is my impression that the diagnosis of osteoarthritis is responsible for the entirety of her clinical presentation in this claim [907297-22]. In claim 574182-22[,] * * * once again, osteoarthritis is responsible for the entirety of her clinical presentation in this regard." (Emphasis added.)

The commission awarded permanent total disability compensation, writing:

"The reports of Drs. de la Iglesia and McCloud were reviewed and evaluated. The findings and award are based particularly on the medical report of Dr. McCloud, the evidence in the file and the evidence adduced at the hearing.

"It is found that Ms. Walton is approximately 65 years of age with an unknown level of education and no special vocational skills. Ms. Walton has a work history as a grocery cashier. The report of Dr. McCloud states that Ms. Walton is permanently and totally impaired as a result of the allowed conditions. It is therefore found that Ms. Walton is permanently and totally disabled."

FNS filed a complaint in mandamus in the Court of Appeals for Franklin County, contesting both the permanent total disability award and the termination of handicap reimbursement that independently occurred during the permanent total disability proceedings. The appellate court upheld both acts and denied the writ.

This cause is now before this court on appeal as of right.

Thomas M. Carolin, for appellant.
Lee Fisher, Attorney General, and Gerald H. Waterman, Assistant Attorney General, for appellee Industrial Commission.

Per Curiam. We must consider whether the commission abused its discretion in either awarding compensation for permanent total disability or terminating handicap reimbursement. For the reasons to follow, an affirmative response to the first inquiry only is warranted.

FNS seeks to overturn the permanent total disability award, claiming a lack of both due process and "some evidence." Only the latter assertion has merit.

FNS initially contends that due process was offended when Commissioner Mayfield, who missed the permanent total disability hearing, voted to award permanent total disability compensation. Contrary to FNS's representation, the commissioner's absence, standing alone, does not establish a constitutional violation. It must also be shown that the absent commissioner did not, in "some meaningful manner," review the evidence presented. (Emphasis deleted.) State ex rel. Ormet Corp. v. Indus. Comm. (1990), 54 Ohio St.3d 102,

107, 561 N.E.2d 920, 925.  Since FNS has made no such allegation, further inquiry is unnecessary.

FNS next argues that the commission improperly relied on McCloud's report in support of its award.  We agree.

McCloud's report is not evidence of entitlement to compensation because it attributed claimant's disability exclusively to arthritis -- a nonallowed condition.

Since McCloud's report was the only one on which the commission relied, its removal from consideration leaves the commission's order unsupported by any evidence of medical impairment with which the nonmedical factors could conceivably combine to produce permanent total disability.  This renders a return for further consideration futile and dictates vacation of the commission's order for lack of "some evidence."  State ex rel. LTV Steel Co. v. Indus. Comm. (1992), 65 Ohio St.3d 22, 599 N.E.2d 265; State ex rel. Owens-Corning Fiberglas, Corp. v. Indus. Comm. (1994), 70 Ohio St.3d 263,         N.E.2d         .

Turning to FNS's remaining challenge, we note that the handicap reimbursement program was created to "encourage [employers] to employ and retain in their employment handicapped employees as defined in this section."  R.C. 4123.343.  Arthritis is one of those enumerated conditions.  R.C. 4123.343(A)(4).  Employers are eligible for reimbursement of all or part of the compensation and benefits paid to a claimant where (1) the injury or occupational disease would not have occurred but for the pre-existing condition or (2) the disability arising from an industrial injury was caused at least in part through aggravation of the pre-existing condition.  R.C. 4123.343(D)(1) and (2).

Handicap reimbursement is paid from the State Surplus Fund.  R.C. 4123.343(B).  The State Surplus Fund, in turn, is an offshoot of the larger State Insurance Fund.  Under R.C. 4123.34(B):

"Ten per cent of the money paid into the state insurance fund shall be set aside for the creation of a surplus fund until the surplus amounts to the sum of one hundred thousand dollars, after which time, whenever necessary in the judgment of the administrator to guarantee a solvent state insurance fund, a sum not exceeding five percent of all the money paid into the state insurance fund shall be credited to the surplus fund. * * *"

Self-insured employers also contribute to the State Surplus Fund.  R.C. 4123.35(D) requires the Administrator of Workers' Compensation to establish by rule that self-insured employers "shall pay into the state insurance fund such amounts as are required to be credited to the surplus in division (B) of section 4123.34 of the Revised Code."  This requirement is at Ohio Adm. Code 4123-17-30.

Prior to 1986, there was no limit on the amount to which an employer could be reimbursed.  On August 22, 1986, however, R.C. 4123.343 was amended to include:

"(F) No employer shall in any year receive credit under this section in an amount greater than the premium he paid if a state fund employer or greater than his assessments if a self-insuring employer.

"(G) Employers granted permission to pay compensation directly under section 4123.35 of the Revised Code may, for all

claims made after January 1, 1987, for compensation and benefits under this section, pay the compensation and benefits directly to the employee or the employee's dependents. If an employer chooses to pay compensation and benefits directly, he shall receive no money or credit from the surplus fund for the payment under this section, nor shall he be required to pay any amounts into the surplus fund that otherwise would be assessed for handicapped reimbursements for claims made after January 1, 1987. Where an employer elects to pay for compensation and benefits pursuant to this section, he shall assume responsibility for compensation and benefits arising out of claims made prior to January 1, 1987, and shall not be required to pay any amounts into the surplus fund and may not receive any money or credit from that fund on account of this section. The election made under this division is irrevocable." Am. Sub. S.B. No. 307, 141 Ohio Laws, Part I, 718, 745.

FNS opted out of the handicap reimbursement program on December 19, 1989. As a result, the commission quit reimbursing FNS for expenditures made thereafter. FNS argues that because its entitlement to reimbursement arose before the statute was amended, it retains the right to continued reimbursement in this claim. This assertion is unpersuasive.

FNS's reliance on R.C. 1.58 and State ex rel. Am. Seaway Foods, Inc. v. Indus. Comm. (1991), 62 Ohio St.3d 50, 577 N.E.2d 1085, is misplaced. R.C. 1.58(A) reads:

"(A) The reenactment, amendment or repeal of a statute does not, except as provided in division (B) of this section:

"(1) Affect the prior operation of the statute or any prior action taken thereunder;

"(2) Affect any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred thereunder;

"* * *

"(4) Affect any investigation, proceeding, or remedy in respect of any such privilege, obligation [or] liability * * *."

FNS's position fails to recognize that it was FNS's own actions, not the amendment of the statute, that eliminated its right to reimbursement. Had FNS not voluntarily opted out of the program, its right to reimbursement would still exist.

Am. Seaway also does not advance appellant's cause. That decision held that R.C. 4123.343(F) could not be used to limit the amount of reimbursement to which an employer was eligible on claims on which the right to reimbursement accrued before the statute's amendment. Am. Seaway did not involve the provision currently at issue -- R.C. 4123.343(G). Equally important, the accrued right in Am. Seaway was indeed destroyed by the commission's application of the statute. In this case, again, any accrued right was destroyed by appellant's own actions, not statutory amendment.

To hold as FNS urges would allow it to receive handicap reimbursement without contributing to the Reimbursement Fund. This is unfair to those employers who may have elected to remain in the program and would continue to pay into it. When FNS chose no longer to contribute to the fund, it also chose not to receive money from it. Therefore, the commission did not abuse its discretion in denying reimbursement.

Accordingly, that portion of the appellate judgment that

returned claimant's permanent total disability application to the commission for further consideration and amended order is reversed.  The balance of the judgment is affirmed.

Judgment reversed in part,
affirmed in part
and writ allowed.

Moyer, C.J., A.W. Sweeney, Wright and Pfeifer, JJ., concur.

Douglas, Resnick and F.E. Sweeney, JJ., dissent.

Douglas, J., dissenting.  I respectfully dissent.  I would affirm the judgment of the court of appeals.

Resnick and F.E. Sweeney, JJ., concur in the foregoing dissenting opinion.