OPINIONS OF THE SUPREME COURT OF OHIO

      The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.

      Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.

      NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.


The State ex rel. Cangemi, Appellant, v. Industrial Commission
of Ohio, Appellee.
[Cite as State ex rel. Cangemi v. Indus. Comm. (1995),     Ohio
St. 3d      .]
Workers' compensation -- Denial of application for permanent
      total disability compensation -- Cause returned to
      commission for further consideration and an amended order
      when claimant's nonmedical disability factors are
      inadequately dealt with in commission's order.
      (No. 93-2420 -- Submitted March 21, 1995 -- Decided July
5, 1995.

      Appeal from the Court of Appeals for Franklin County, No.
92AP-1392.

       Appellant-claimant, Charles A. Cangemi, Sr., was injured
in 1966, 1980 and 1986 while in the course of and arising from
his employment with Roediger Construction, E.F. Donley & Sons,
Inc. and North Coast Concrete, respectively.  His workers'
compensation claims have been collectively allowed for
"contusion of the lower back, muscle strain of the back,
cervical and thoracic myofascitis and a sprain of the right
ankle."  He applied to appellee, Industrial Commission of Ohio,
for permanent total disability compensation in 1991.

      Several medical reports were before the commission.  Dr.
Lydia Ljuboja declared that claimant was permanently and
totally "disabled."  Dr. Russell M. Elmer came to the same
conclusion, and based his opinion entirely on a nonallowed
arthritic condition.  Claimant's nonallowed arthritis anchored
a similar conclusion from Dr. Gerard Seltzer, and accounted for
the sedentary-work restrictions imposed by Dr. Kevin L.
Trangle.  Dr. Jerry McCloud found a fifty-percent permanent
partial impairment due to the allowed conditions.  He felt that
claimant could not return to his former position, but could do
work that did not involve lifting over twenty pounds or which
involved sitting, standing or walking for a period not longer
than two hours.

      Claimant also submitted a report from William L. Fink,
vocational consultant.  Fink wrote:
      "A December 4, 1991 Ohio Industrial Commission

Specialist's Report, of W. Jerry McCloud, M.D., notes a 50% impairment for Mr. Cangemi. Dr. McCloud also opined that Mr. Cangemi is not capable of his 1986 work activities and that Mr. Cangemi would be restricted from repetitive bending, or [to] sit or stand or ambulate for intervals longer than two hours. Dr. McCloud also noted that Mr. Cangemi would not be a good candidate for rehabilitation.

"Taking Dr. McCloud's recommendations at face value[,] Mr. Cangemi could do neither sedentary work [n]or light work. Sedentary work requires that one sits [sic] at his job for the better part of a working day. Light work requires the individual to stand throughout the working day with the exception of those light jobs that are performed seated, but require the use of foot or hand controls. Furthermore, none of Mr. Cangemi's past relevant work imparted any transferable skills to light or sedentary work. His limited education would also preclude his working in a permissive work setting whereby he could sit or stand at will. Additionally, there are no construction related jobs that Mr. Cangemi could do with his 50% residual capacity.

"Mr. Cangemi has never commercially handled employer's money, he has no clerical or managerial skills, he is not a researcher or a professional worker, his skills were in his hands and back.

"Thus, it is my opinion as a vocational rehabilitation consultant * * * [that] there simply are no areas of sustained remunerative activity that Mr. Cangemi can do. It is my opinion that he should be considered permanently and totally disabled from a vocational rehabilitation point of view."

On May 26, 1992, the commission denied permanent total disability compensation, stating:

"* * * The reports of Doctor(s) Ljuboja, McCloud, Elmer, Trangle and Mr. Fink were reviewed and evaluated. The order is based particularly upon the reports of Doctor(s) McCloud and Trangle, evidence in the file and/or evidence adduced at the hearing.

"These claims are allowed only for a contusion of the lower back, muscle strain of the back, cervical and thoracic myofascitis and a sprain of the right ankle. Dr. Trangle suggests claimant is capable of working if provided a stool, or can sit or stand at will. According to Specialist Dr. McCloud, examining orthopedist for the Commission, he can sit or stand at two hour stretches and is capable of lifting up to 20 lbs. There should be work available in this category for claimant. Physician Dr. Elmer indicates that claimant could do work as a checker or a clerk. From a vocational standpoint, claimant has a history of work as an [i]ronworker, lathe operator, construction work[er], truck jumper and served one year in the U.S. Army. When the effects of the allowed conditions are considered together with his background, claimant does retain the capacity to return to sedentary and light work. Therefore, the application is denied."

Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in denying permanent total disability compensation. The appellate court found that the commission's order did not satisfy State ex rel. Noll v. Indus. Comm.

(1990), 57 Ohio St.3d 203, 567 N.E.2d 245, and returned the cause to the commission for further consideration and amended order.

The cause is now before this court as of right.

Stewart Jaffy & Associates Co., L.P.A., Stewart R. Jaffy, Marc J. Jaffy; Hahn, Swadey & Pollock and Victor Hahn, for appellant.

Betty D. Montgomery, Attorney General, Michael O'Grady, Diane M. Meftah and Richard A. Hernandez, Assistant Attorneys General, for appellee.

Per Curiam. Claimant seeks relief consistent with State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315, 626 N.E.2d 666. The appellate court declined to issue the relief requested, choosing instead to return the cause pursuant to Noll. We affirm its judgment.

Claimant's procedural arguments are dealt with first. Claimant raises two meritless due-process propositions, the first of which -- lack of permanent total disability guidelines -- was rejected in State ex rel. Blake v. Indus. Comm. (1992), 65 Ohio St.3d 453, 605 N.E.2d 23, and many times since.

Claimant also denies that he received a fair hearing, accusing the commission of ruling on his permanent total disability application prior to hearing. This assertion is based on the commission's adoption of suggested findings contained in a statement of facts prepared for the commission. This argument lacks persuasiveness as well.

State ex rel. Ormet Corp. v. Indus. Comm. (1990), 54 Ohio St.3d 102, 561 N.E.2d 920 -- on which the claimant relies -- declared that due process demands a meaningful evidentiary review by commission members. Claimant cannot dispute that the commission, per its order, reviewed and evaluated the evidence before it. Claimant cannot, therefore, credibly allege an Ormet violation.

The commission, moreover, did not offend due process by adopting the suggested findings of the subordinate who had also reviewed the evidence. Ormet was based largely on a series of United States Supreme Court cases arising from a USDA inquiry into the reasonableness of rates charged by market agencies. These four cases, cited in Ormet, supra -- all captioned Morgan v. United States -- affirmed the ability of a decisionmaker to utilize evidentiary reports or summaries prepared by subordinates. Morgan I (1936), 298 U.S. 468, 56 S. Ct. 906, 80 L.Ed. 1288, for example, has been interpreted as follows:

"According to the opinion in the leading First Morgan case, the requirement is not that deciding officers must personally read the record but it is that they must personally 'consider and appraise' the evidence. The Court declared: 'Evidence may be taken by an examiner. Evidence thus taken may be sifted and analyzed by competent subordinates.' Since the only purpose of sifting and analyzing of evidence by subordinates is to save the time of the deciding officers, this necessarily means that deciding officers may 'consider and appraise' the evidence by reading the summary or analysis prepared by subordinates. The Supreme Court thus did not require in the First Morgan case that deciding officers must

read all the evidence or even that they must directly read any of it.  The requirement has to do with personal understanding of the evidence, not with the mechanics by which the understanding is developed.  In common practice, deciding officers develop their understanding of evidence not only through reports of subordinates, but especially through summaries and explanations in briefs and oral arguments of parties." 2 Davis, Administrative Law Treatise (1958) 44-45, Section 11.03; see 3 Davis, Administrative Law Treatise (1980) 281-282, Section 17.3.

Claimant's second due process argument is accordingly rejected.

Next, claimant asserts that the commission did not "affirmatively consider" the Fink vocational report.  The commission's order clearly indicates that Fink's report was "reviewed and evaluated," negating claimant's assertion otherwise.  Claimant also seeks a nonallowed arthritic back condition factored into his permanent total disability assessment.  Claimant argues that because the condition was allegedly aggravated by his industrial injury, the commission must consider it.  We disagree.

Claimant alleges a causal relationship between injury and condition, via aggravation, that would make it amenable to formal allowance.  Schell v. Globe Trucking, Inc. (1990), 48 Ohio St.3d 1, 548 N.E.2d 920.  Claimant, however, has failed to explain why he has not sought allowance for his arthritic back condition, and, in so doing, provides no reason why we should revisit the question of consideration of nonallowed conditions.  We decline, therefore, to consider this issue further at this time.

Claimant lastly seeks a writ to compel permanent total disability compensation pursuant to Gay, supra.  While we find that the commission's order does not satisfy Noll, supra, it does not merit relief consistent with Gay either.

In this instance, Noll noncompliance stems from the commission's inadequate treatment of claimant's nonmedical disability factors.  Its discussion of claimant's work history consists merely of a string cite of claimant's former jobs.  How this prior experience interacts with claimant's medical restrictions was never explored.  Equally important, claimant's age and seventh grade education are never mentioned.  We find this to be unacceptable.

Gay relief is equally untenable, given the conflicting medical evidence before us.  While perhaps the reports of Drs. McCloud and certainly Ljuboja favor permanent total disability compensation, Drs. Trangle and Elmer indicate that there is no underlying impairment whatsoever attributable to the allowed conditions.  The evidence therefore does not have the requisite one-sidedness common to successful claims for Gay relief.

The appellate court judgment is accordingly affirmed.

                              Judgment affirmed.

Moyer, C.J., Douglas, Wright, Resnick, F.E. Sweeney, Pfeifer and Cook, JJ., concur.