THE STATE, EX REL. WENCO, INC., OF OHIO, *v.*
INDUSTRIAL COMMISSION OF OHIO ET AL.

[Cite as State, ex rel. Wenco, Inc., v. Indus. Comm. (1979),
65 Ohio App. 2d 233.]

(No. 79AP-58—Decided September 25, 1979.)

*Messrs. Taft, Stettinius & Hollister, Mr. Gerald J. Rapien*
and *Mr. Steven N. Stein,* for relator.

*Mr. William J. Brown,* attorney general, *Mr. Robert L.
Holder* and *Mr. Michael J. Hickey,* for respondents.

WHITESIDE, J. By this original action in mandamus,
relator, Wenco, Inc., of Ohio, contends that respondent Industrial Commission abused its discretion in denying relator

self-insurer status for workers' compensation, which it had elected to assume pursuant to R. C. 4123.35. The parties have entered into a stipulation of the evidence to be considered by this court and, in addition, have submitted the testimony of two witnesses by way of deposition.

Relator contends that the Industrial Commission concedes that relator meets all requirements for self-insurer status, including demonstrating the required financial ability. However, not only is this denied in the answer filed herein by respondents, but the stipulated facts demonstrate that relator's application for self-insurer status was denied solely because relator did not meet "minimun requirements." Further, it is clear from the evidence that the minimum requirement referred to was that provision of Ohio Adm. Code 4121-9-03(A) requiring that the "***[a]pplicant must also have five hundred or more employees in Ohio or must presently be paying one hundred thousand dollars or more in annual premiums.***" Concededly, relator does not meet this requirement, and the only determination made by the commission was that it should not waive this requirement. Thus, the only issue to be resolved in this cause at this time is whether the above requirement of Ohio Adm. Code 4121-9-03(A) is invalid.

Relator contends that the rule is invalid because it bears no reasonable relationship to the legislative criteria upon which it is based and because it is designed merely to prevent financially capable companies from leaving the state fund.

To the extent that the rule is designed solely to prevent statutorily qualified employers from becoming self-insurers, obviously, the rule is invalid, as it would also be even if it unintentionally had that effect. In this regard, R. C. 4123.35 (136 Ohio Laws 1133-1136) is quite explicit and provides, in part, as follows:

"***Provided, that such employers and publicly owned utilities who will abide by the rules of the commission and who may be of sufficient financial ability to render certain the payment of compensation to injured employees or the dependents of killed employees, and the furnishing of medical, surgical, nursing, and hospital attention and services and medicines, and funeral expenses***and who do not desire to insure the payment thereof or indemnify themselves against loss sustained by the direct payment thereof, may, upon a finding of

such facts by the commission, elect to pay individually such compensation, and furnish such medical, surgical, nursing, and hospital services and attention and funeral expenses directly to such injured employees or the dependents of such killed employees. The commission may require such security or bond from said employers and publicly owned utilities as it deems proper, adequate, and sufficient to compel, or secure to such injured employees, or to the dependents of such employees as may be killed, the payment of such compensation and expenses***. The commission shall make and publish rules governing the manner of making application and the nature and extent of the proof required to justify such finding of fact by said commission as to permit such election by such employers and publicly owned utilities, which rules shall be general in their application, one of which rules shall provide that all employers, including publicly owned utilities, electing directly to compensate their injured employees and the dependents of their killed employees, shall pay into the state insurance fund such amounts as are required to be credited to the surplus in division (B) of section 4123.34 of the Revised Code. The commission also shall adopt rules: establishing a minimum level of performance as a criterion for granting permission to pay compensation directly; fixing time limits beyond which failure of the self-insuring employer to provide for the necessary medical examinations and evaluations may not delay a decision on a claim; establishing the grounds upon which the commission will hold a public hearing to evaluate the program for self-insuring employers and set forth the procedures for revocation of self-insurer status which shall include continued failure to file medical reports bearing upon the injury of the claimant and failure to pay compensation or benefits in accordance with law in a timely manner.***"

The challenged requirement, by its terms, is in addition to and different from the statutory requirement of sufficient financial ability since Ohio Adm. Code 4121-9-03(A) reads in its entirety, as follows:

"The employer must have been operating in Ohio for a minimum period of two years and have demonstrated financial ability to meet its obligations under section 4123.35 of the Revised Code. Applicant must also have five hundred or more employees in Ohio or must presently be paying one hundred

thousand dollars or more in annual premiums. The commission, in its discretion, may waive these requirements when appropriate.''

In addition, Ohio Adm. Code 4121-9-03(K) requires that:

''The employer must have in Ohio a company office and one or more company employees experienced with the requirements of the Ohio Workers' Compensation Act and the rules and regulations thereunder to administer its employees' workers' compensation claims, including but not limited to processing and allowing or disallowing claims, paying compensation and benefits, maintaining files and making them available for inspection. In the alternative the employer must designate a particular individual, subject to approval by the commission, who has authority to pay claims and authorize settlements. The ultimate responsibility for the handling of workers' compensation claims rests with the employer granted the privilege of self-insurance. This rule is not intended to prevent the hiring of an attorney or representative to assist such employer in the handling and processing of workers' compensation claims.''

Ohio Adm. Code 4121-9-03(M) establishes the minimum ''level of performance as a criterion for granting permission to pay compensation directly.''

It is difficult to conceive of any rational basis for the requirement that a self-insurer either have 500 or more employees or pay $100,000 or more per year in premiums. The testimony of the witnesses in the two depositions tends to conclusively establish that there is no rational basis for the requirement since one of the witnesses apparently devised the standard but could not explain any reasonable basis for it. More importantly, however, there is no reasonable relationship between the requirement and the statutory criteria. R. C. 4123.35 is quite explicit that an employer is entitled to become a self-insurer if it meets the statutory criteria, which now includes the commission's rules as to a minimum level of performance. As noted, the rule in question is not one of the minimum levels of performance, which instead are set forth in Ohio Adm. Code 4121-9-03(M); however, the requirements of Ohio Adm. Code 4121-9-03(M) are such that, if an applicant can demonstrate not only his financial ability but also his ability to meet the required minimum level of performance, it

would be inconceivable of any need or reason for the 500-employee or $100,000-premium requirement.

Obviously, there is no necessary relationship between financial ability and the number of employees, and, in any event, the rule itself states that the 500-employee or $100,000-premium requirement is in addition to the requirement of demonstrating financial ability. What the evidence indicates is that the rule is one which was previously created in antiquity as an unwritten rule and has been carried over primarily from tradition without reason or basis.

The evidence further indicates that the more injuries, or the more serious nature of the injuries, sustained by one's employees the more likely the employer is to meet the $100,000-premium category, since the premiums are increased or decreased predicated upon the experience of the employer. Also, if there happened to be a serious incident injuring numerous employees of a given employer, he is more apt at that time to meet the $100,000 requirement, inasmuch as a four-year experience basis is used for determining premiums.

In effect, the $100,000-premium requirement benefits the more negligent employer, whose employees sustain numerous injuries and, therefore, has an increased premium rate to the detriment of the more careful employer, whose employees have sustained few injuries and, thereby, has a greatly reduced premium rate. Because of this experienced rating of employers, there can be a great difference between the premiums paid by two employers in the same industry, even where they had the same number of employees and the same payroll. Under such circumstances, an employer with a bad experience rating would meet the $100,000 requirement; whereas, another employer in the same industry with the same number of employees and the same payroll with a good experience rating would not qualify for self-insurer status. The $100,000-premium requirement appears to be completely unreasonable and completely unrelated to any proper consideration to be made by the commission in determining self-insurer status—at least, neither the evidence nor the arguments have demonstrated any to this court.

Likewise, the 500-employee requirement is unreasonable and bears no relationship whatsoever to any proper consideration that the commission might make in determining self-

insurer status. Obviously, the thrust of the statute is primarily two-fold: (1) to assure that the employer has sufficient financial ability to assure that its employees or their beneficiaries will be paid the compensation or benefits due them under the law; and, (2) to assure that the employer will promptly administer and make payments of the amounts due to such employees or their beneficiaries. There is no relationship between having 500 employees and either of these purposes.

R. C. 4123.35 confers upon the commission the power to make four general types of rules in this regard: (1) rules governing the manner of making application; (2) rules as to the nature and extent of proof required to justify the finding of fact that the employer has sufficient financial ability; (3) rules establishing a minimum level of performance as a criterion for granting permission to pay compensation directly; and, (4) rules fixing time limits within which a self-insured employer must determine a claim. Obviously, neither the 500-employee nor the $100,000-premium requirement bears any relationship to any of these purposes. This is especially true since the rule itself disavows the purpose of financial ability or minimum performance as being a basis for this additional alternative requirement, and, obviously, it establishes neither the manner of making application nor the time limitations for determining claims.

Accordingly, not only does there not appear to be any reasonable relationship between the 500-employee or $100,000-premium requirement for self-insurer status and the statutory criteria set forth in R. C. 4123.35, but Ohio Adm. Code 4121-9-03(A) and (M) expressly demonstrate and provide that the requirement has no relationship to financial ability or the minimum level of performance.

Accordingly, we must conclude that the requirement is invalid and that the respondent commission abused its discretion in denying relator's application for self-insurer status solely because it neither had 500 or more employees nor paid $100,000 or more per year in premiums.

Therefore, a writ of mandamus will issue, ordering respondent commission to reconsider the application of relator for self-insurer status, and to determine that application upon the proper statutory criteria and the rules properly adopted pursuant thereto, without reference to and disregarding the

fact that relator does not have 500 or more employees and does not pay $100,000 or more in premiums and without considering the invalid rule making such a prerequisite.

*Writ allowed.*

McCORMAC and MOYER, JJ., concur.