CUYAHOGA METROPOLITAN HOUSING AUTHORITY, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLANTS.

(No. 83AP-206—Decided September 27, 1983.)

*Messrs. Kelly, McCann, & Livingstone, Mr. Stephen M. O'Bryan, Mr. Fred J. Livingstone* and *Ms. Michael Anne Johnson,* for appellee.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, *Mr. Bradley J. Finn* and *Mr. Thomas E. Skilken,* for appellants.

NORRIS, J. Defendants, the Industrial Commission of Ohio and its members, and the Bureau of Workers' Compensation and its administrator, appeal from a judgment of the trial court granting to plaintiff a declaratory judgment that a portion of a rule of the commission is invalid and ordering a refund to plaintiff of $476,384 in premiums it paid into the State Insurance Fund.

Plaintiff, a private employer, became a participant in the State Insurance Fund in 1933, and paid premiums into the fund thereafter. In 1980, its application to become a self-insuring employer was approved by the commission, pursuant to the provisions of R.C. 4123.35.

Prior to granting plaintiff self-insurance status, the commission made calculations required by its "buy-out rule," which reads as follows:

"(N) If at the time of applying for the self-insurance status the employer is a state risk, which means that it has industrial insurance coverage by paying premiums to the state insurance fund, the following additional provisions shall be applicable:

"(1) When an employer requests approval of the industrial commission to transfer from state fund to self-insurance, the actuary of the commission and bureau shall determine, on the basis of the full past experience of the industrial commission and the bureau of workers' compensation, the amount of the liability of such employer to the commission and bureau for losses incurred and losses which may be incurred for injuries or occupational diseases occurring during the oldest four of the latest five-calendar-year period used in the most recent merit rating

calculations as of the date of filing of the application for self-insurance. If the ultimate liability of risk losses exceeds pure premium paid on payroll for those same four calendar years, the difference shall be paid by the risk to the state insurance fund. If pure premium paid exceeds the ultimate liability of risk losses, then no refund of excess premium shall be made. * * *" (Ohio Adm. Code 4121-9-03[N][1].)

According to the calculations, defendants determined that plaintiff's premiums paid exceeded its ultimate liability of risk losses. Plaintiff sought a refund of the excess, which was denied.

Plaintiff then brought an action seeking a declaration that it was entitled to the refund.

Defendants raise six assignments of error:

"I. The lower court erred in finding that the buy-out rule was without proper statutory basis.

"II. The lower court erred by finding the buy-out rule to be in violation of the Equal Protection Clause of the U.S. and Ohio Constitutions.

"III. The lower court erred in finding the buy-out rule is in derogation of the industrial commission fiduciary duties to employers and employees.

"IV. The referee erred by including findings of fact in his report which are clearly irrelevant to the issues raised in this case.

"V. The lower court erred in ruling that CMHA is entitled to a refund of premium is contrary to the basic principles of Workers' Compensation Insurance and is therefore contrary to law.

"VI. To affirm the relief granted to CMHA would have the effect of making or revising an administrative rule and therefore is prohibited by law."

The first assignment of error is directed at several of the trial court's conclusions of law, among them that the portion of the rule which prohibits a refund to plaintiff "is not reasonably related to R.C.

4123.35 (which authorizes the Commission to promulgate rules for self-insurance) * * *." We assume from the quoted language that the trial court also concluded that that portion of the rule was invalid as being beyond the General Assembly's grant of rule-making authority. In support of its conclusion, the trial court cited our opinion in *State, ex rel. Wenco, Inc.,* v. *Indus. Comm.* (1979), 65 Ohio App. 2d 233 [19 O.O.3d 197]. If the trial court is correct in its application of that opinion, then the entire rule (including the portion requiring employers in a deficit position to pay into the insurance fund) was beyond the capacity of the commission to promulgate, not just a portion. And, if the entire rule is invalid, then the trial court was left without a basis upon which to ground its equal protection conclusions.

However, the reasoning applied in our opinion in *State, ex rel. Wenco, supra,* does not prevent the promulgation of the rule. In that case, we were concerned with a rule promulgated by the commission with a purported purpose of creating a standard to determine whether an employer would have the capacity to assume self-insurance status and at the same time afford to its employees the protection they would receive if their employer were paying into the State Insurance Fund, and we noted that the challenged rule in that case bore no reasonable relationship to the standards promulgated in R.C. 4123.35 for making that determination. Here, the purported purpose of the challenged rule is related to the integrity of the fund and the effect the exiting of an employer will have on the fund. Accordingly, the question that should have been addressed by the trial court was whether the rule bears a reasonable relationship to the authority granted the commission by the General Assembly, in R.C. 4123.32, to adopt rules relating to the maintenance of the State Insurance Fund. We are unable to say that the rule is not within the General

Assembly's grant of rule-making authority for that purpose.

Defendants further contend that the trial court erred in concluding that "[t]he refund of premium paid by a self-insurance applicant in excess of its ultimate liability of risk losses ('excess premiums') is required by the merit-rating principle of R.C. 4123.34(C)." That provision of the Revised Code reads as follows:

"(C)  The commission may apply that form of rating system which it finds is best calculated to merit rate or individually rate the risk more equitably, predicated upon the basis of its individual industrial accident and occupational disease experience, and may encourage and stimulate accident prevention. The commission shall develop fixed and equitable rules controlling the rating system, which rules shall conserve to each risk the basic principles of workers' compensation insurance."

It is conceded by the parties, and the trial court found, that the commission has adopted a merit-rating system which gives an employer with claims experience better than the norm a percentage credit off its basic premium rate, and charges an employer with experience worse than the norm a percentage surcharge on top of its basic premium rate. There is no requirement found in R.C. 4123.34(C) that any merit-rating system adopted by the commission provide for the refund of any premiums to employers who seek to leave the fund and assume the status of self-insuring employers.

Also well-taken is defendants' contention that the trial court erred in concluding that "[t]he refund of excess premium paid by a self-insurance applicant is mandated by the R.C. 4123.32(A) requirement that the Industrial Commission shall promulgate rules for cash refunds when there is a surplus of earned premium over all losses which is larger than necessary to adequately maintain the solvency of the fund." R.C. 4123.32(A) is set out below:

"The industrial commission shall adopt rules with respect to the collection, maintenance, and disbursements of the state insurance fund among which rules shall be the following:

"(A)  A rule providing that in the event there is developed as of any given rate revision date a surplus of earned premium over all losses which, in the judgment of the commission, is larger than is necessary adequately to safeguard the solvency of the fund, the commission may return such excess surplus to the subscriber to the fund in either the form of cash refunds or a reduction of future premiums; * * *"

The rule mandated by R.C. 4123.32 (A) refers to a consideration of the rate structure required to maintain the solvency of the fund as a whole, and not to the individual "accounts" of employers. In its sixteenth finding of fact, the trial court noted that the commission had approved a series of credits and reductions in premiums, resulting in savings to employers paying premiums into the fund.

The first assignment of error is sustained.

The second and third assignments of error are related and will be considered together.

We are unable to agree with the trial court's conclusion that:

"5.  Insofar as Rule 4121-9-03(N)(1) prohibits a refund of excess premium paid by CMHA and similarly situated good experience employers, it discriminates against them in favor of those merit-rated employers with good experience who remain in the State Insurance Fund and in favor of those applicants for self-insurance who under the Buy-Out Formula only have to pay the deficit amount of their ultimate liability of risk losses. * * *"

The rule affords equal treatment by providing that no withdrawing employer will receive a refund of premiums paid. We are unable to say that retention of

premiums paid is unreasonable and arbitrary. During the time an employer pays premiums into the fund, he receives value, in the form of protection. In this sense, the situation would be analogous to an owner of an insurance policy cancelling his policy and contending that his premiums should be returned because of his good claims experience. An employer who believes his premiums are excessive has a remedy by challenging the rate charged him. As pointed out above, employers with good loss experience will receive the benefit of decreased premiums in the future, by operation of the merit-rating system. The statutes grant to a qualifying employer the privilege of relief from the burden of payment of premiums into the fund in the future by way of electing to become self-insurers. This election is voluntary — no employer need withdraw and forfeit the prospect of seeing his premiums reduced by his good loss experience. The choice to leave or to stay is his. In addition, he can choose the time of his election to coincide with a point in time when forfeiture of premiums paid will result in little or no loss to him in terms of the benefit of possible future premiums reductions.

Accordingly, the second and third assignments of error are sustained.

The fourth assignment of error is overruled, as defendants have failed to demonstrate any prejudice to their cause by the inclusion of the findings of fact they maintain are irrelevant.

As there is no statutory basis for requiring or making a refund, the fifth and sixth assignments of error are sustained.

The first, second, third, fifth and sixth assignments of error are sustained, the fourth assignment of error is overruled, the judgment of the trial court is reversed, and this cause is remanded to the trial court with instructions to enter judgment for defendants.

*Judgment reversed.*

WHITESIDE, P.J., and MOYER, J., concur.