DECISION
{¶ 1} Relator, Medcorp, Inc., commenced this original action seeking a writ of mandamus that orders respondent, Ohio Bureau of Workers' Compensation ("BWC") to vacate two orders that (1) reclassified relator from Code 9620 to 7370 and resulted in an *Page 2 
increase in relator's premiums, and (2) denied relator's application seeking the opportunity to be self-insured under Ohio's workers' compensation system.
 {¶ 2} Pursuant to Civ. R. 53 and Section (M), Loc. R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate concluded the BWC did not abuse its discretion in reclassifying relator from Code 9620 to 7370 and in denying relator's application to be self-insured. Accordingly, the magistrate determined the requested writ should be denied.
 {¶ 3} Relator filed objections to the magistrate's findings of fact and conclusions of law.
I. Objection to Findings of Fact {¶ 4} Relator's single objection to the magistrate's factual findings involves Finding of Fact No. 9 in which the magistrate stated that relator filed the financial risk worksheet of Mr. Kersey to support its self-insurance application. Relator contends Mr. Kersey prepared the risk analysis at the "behest of the BWC." (Objections, 2.) The magistrate's and relator's statements relative to Mr. Kersey's report are not necessarily inconsistent. Nonetheless, we need not ascertain which statement, if not both, is accurate, as such a determination is not significant to the matters to be resolved in relator's requested writ or its objections to the conclusions of law. Accordingly, the objection is overruled.
II. Objections to Conclusions of Law {¶ 5} Relator submitted the following objections to the magistrate's conclusions of law: *Page 3 
 I. Respondent Acted In An Arbitrary And Capricious Manner By Failing To Consider Relator's Application Under Rules Enacted Pursuant To R.C. 4123.53(E).
 II. Respondent Abused Its Discretion By Failing To Follow Its Internal Rules.
 III. The Decision Denying MedCorp's Self-Insurance Application Is Arbitrary And Capricious Because The Person Making The Ultimate Decision Did Not In Fact Engage In the Review Process And Did Not Undertake A Meaningful Review Of The Evidence Presented At Hearing.
 IV. The BWC Abused Its Discretion and Acted In An Arbitrary And Capricious Manner In Denying MedCorp's Request For Discretionary Rate Reclassification.
 A. Rule Promulgation
 {¶ 6} Relator's first objection to the magistrate's conclusions of law contends the BWC abused its discretion by deciding relator's application for self-insured status without first complying with the statutory mandate under R.C. 4123.35(E) to promulgate rules. Although the BWC promulgated Ohio Adm. Code 4123-19-03 pursuant to that section, relator contends the rule fails to address the requirements the General Assembly established in R.C. 4123.35(E).
 {¶ 7} In relevant part, R.C. 4123.35(E) states that "[i]n addition to the requirements of this section, the administrator shall make and publish rules governing the manner of making application and the nature and extent of the proof required to justify a finding of fact by the administrator as to granting the status of a self-insuring employer * * *." Relator argues that Ohio Adm. Code 4123-19-03 merely restates the requirements provided in R.C. 4123.35 without providing rules governing the "nature and extent of proof" required for self-insured status. Relator's request for a writ of mandamus thus *Page 4 
resolves to whether we properly may determine in mandamus the extent to which Ohio Adm. Code 4123-19-03 complies with the statutory provision relative to the nature and extent of proof required in an employer's application to self-insure.
 {¶ 8} To be entitled to a writ of mandamus, relator must demonstrate (1) it has a clear legal right to the relief requested, (2) the respondent is under a clear legal duty to perform the requested act, and (3) relator has no plain and adequate remedy in the ordinary course of law. State ex rel. Ohio Civ. Serv. Employees Assn., AFSCME, Local 11,AFL-CIO v. State Emp. Relations Bd., 104 Ohio St.3d 122, 2004-Ohio-6363, at ¶ 9, citing State ex rel. Natl. City Bank v. Bd. of Edn. (1977),52 Ohio St.2d 81, 84.
 {¶ 9} The Ohio Supreme Court in State ex rel. United Auto Aerospace Agricultural Implement Workers of Am. v. Ohio Bur. of Workers'Comp., 95 Ohio St.3d 408, 2002-Ohio-2491 ("United Auto I"), granted a writ of mandamus regarding rule-making duties, but did so because the BWC failed to promulgate any rules that would permit it to grant a premium reduction credit. Id. at ¶ 11-13. In contrast, although relator couches its argument in terms of the BWC's failure to promulgate rules relating to the "nature and extent of proof" required to support self-insured status, in reality relator is not trying to force the BWC to comply with statutorily-imposed duties; the BWC already promulgated a rule pursuant to R.C. 4123.35(E). Rather, relator seeks a judicial determination that the BWC acted improperly in carrying out those duties in that its rule does not satisfy the statutory criteria. Thus, unlike the situation confronted in United Auto I where no rule at all was promulgated, here the question is one of interpreting Ohio Adm. Code 4123-19-03 to ascertain whether it addresses all the statutory criteria. Even though relator posits its allegations in terms of compelling an affirmative duty to *Page 5 
promulgate a rule in accordance with the statute, relator in effect is seeking a declaratory judgment that determines the promulgated rule to be inadequate.
 {¶ 10} In an attempt to circumvent this court's jurisdictional restrictions relative to declaratory judgment actions, relator points out that this court in State ex rel. Wenco, Inc. v. Indus. Comm. (1979),65 Ohio App.2d 233 issued a writ of mandamus ordering the BWC to reconsider an application for self-insurer status and to promulgate rules conforming to statutory criteria. Wenco held the BWC's rule governing self-insured status forced applicants to meet requirements "in addition to and different from" the statutory requirements. Id. at 235. Unlike the present case, the BWC's rule challenged in Wenco exceeded the BWC's statutory authority. Nonetheless, in Wenco this court examined an existing rule's compliance with its governing statute in the context of a request for a writ of mandamus.
 {¶ 11} Wenco, however, did not address whether the elements for a writ of mandamus were satisfied. When a case does not address questions of jurisdiction, the case does not bind a court in a subsequent case that brings the jurisdictional issue before it. State ex rel. United Auto.,Aerospace Agricultural Implement Workers of Am. v. Ohio Bur. ofWorkers' Comp., 108 Ohio St.3d 432, 2006-Ohio-1327, at ¶ 46 ("UnitedAuto III"), citing Grendell v. Ohio Supreme Court (C.A.6, 2001), 252 F.3d 828, 837, quoting Hagans v. Lavine (1974), 415 U.S. 528, 535.
 {¶ 12} More significantly, as this court noted in State ex rel. OhioApt. Assn. v. Wilkins, Franklin App. No. 06AP-198, 2006-Ohio-6783, at ¶ 10, United Auto III illustrates that since Wenco was decided in this court, the Supreme Court of Ohio has taken a "significantly more narrow view of when an appellate court's mandamus jurisdiction may *Page 6 
be invoked." The narrow view has been applied particularly where, as in the present case, the relator's allegations indicate the actual goal of the mandamus action is a declaratory judgment. Id.
 {¶ 13} Moreover, unlike United Auto I, "this action does not present a moot but significant issue that could evade review completely unless addressed in the present action. Further, an action in declaratory judgment or in tort has not been demonstrated to be inadequate for resolving the issues presented here." State of Ohio ex rel. United AutoAerospace Agricultural Implement Workers of Am. v. Ohio Bur. ofWorkers' Comp., Franklin App. No. 03AP-361, 2005-Ohio-355, at ¶ 44
("United Auto II").
 {¶ 14} In the final analysis, relator's first objection to the magistrate's conclusions of law raises an issue, properly determined in declaratory judgment, for which relator has an adequate remedy at law. Accordingly, we overrule its first objection.
B. Internal Rules
 {¶ 15} Relator's second objection contends the BWC abused its discretion by failing to follow its internal rule. Relator's argument focuses on an internal rule requiring the underwriting supervisor, after reviewing an application, to do "one of the following": (1) request additional financial information from the applicant when there are concerns with financial performance, (2) forward the information to the assistant director for final approval sign off, or (3) forward the information to the assistant director for additional review when financial concerns are found and "additional securities or non-renewal is necessary." Since no additional information was requested, and relator was not given the opportunity to offer additional security to bolster its application, relator contends the BWC failed to comply with its own internal rule. *Page 7 
 {¶ 16} Assuming, without deciding, the rule at issue applies to new applications as well as renewal applications, we initially note the text of the rule belies relator's argument that the BWC did not follow its own internal rule. Pursuant to the rule, the BWC is to perform one of the three options listed in the rule, but is not required to comply with all of them. While one option available to the underwriting supervisor allows him or her to request additional information from the applicant, the underwriting supervisor alternatively can forward the application to the assistant director if the underwriting supervisor concludes denial or non-renewal is necessary.
 {¶ 17} The stipulated record indicates the latter option was used in this case. An electronic message of David Boyd, the Director of Self-Insurance, explains that his analysis of relator's financial performance led him to conclude that denying the application, rather than requesting additional information or additional security, was appropriate.
 {¶ 18} Moreover, apart from the text of the BWC's internal rule, a writ of mandamus generally is not the appropriate procedural vehicle to challenge an agency's alleged failure to comply with its internal rules. See State ex rel. Strothers v. Colon (Feb. 12, 1999), Cuyahoga App. No. 74916 (denying writ of mandamus for failure to follow internal rules). Accordingly, relator's second objection to the magistrate's conclusions of law is overruled.
C. Absent Decision-Maker
 {¶ 19} Relying on State ex rel. Ormet Corp. v. Indus. Comm. (1990),54 Ohio St.3d 102, relator's third objection to the magistrate's conclusions of law contends the decision-maker, who did not attend the hearing, did not meaningfully consider the evidence. *Page 8 
 {¶ 20} As the Ohio Supreme Court stated in Ormet, "the decision-maker must, in some meaningful manner, consider evidence obtained at hearing." (Emphasis sic.) Id. at 107. In Ormet, (1) a commissioner did not attend the hearing, (2) transcript was not taken, (3) neither a summary nor report of the hearing was prepared, and (4) no other hearing or meeting occurred between the absent commissioner and the other commissioners concerning claimant's application. Id. "It is thus undisputed that [the commissioner] did not in any manner consider any evidence presented at the hearing." (Emphasis sic.) Id.
 {¶ 21} Here, although Keith Elliott did not attend the hearing, a summary of the evidence was presented to him. "[D]eciding officers may `consider and appraise' the evidence by reading a summary or analysis prepared by subordinates." Id. at 106, quoting Administrative Law (1 Ed. 1958), Section 11.03. Because Elliott was provided a summary of the evidence, the BWC at least minimally complied with the requirements ofOrmet.
 {¶ 22} Relator's third objection to the magistrate's conclusions of law is overruled.
D. Reclassification Determination
 {¶ 23} Relator's fourth objection contends the commission abused its discretion in its reclassification determination. The magistrate's decision adequately addresses the issue, and for the reasons set forth in the magistrate's decision, relator's objection is overruled.
 {¶ 24} Following independent review pursuant to Civ. R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions *Page 9 
of law contained in it, as amplified and modified here. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ denied.
 McGRATH, P.J., and BROWN, J., concur. *Page 10 
 APPENDIX A MAGISTRATE'S DECISION Rendered on January 17, 2008 IN MANDAMUS {¶ 25} Relator, Medcorp, Inc., has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Ohio Bureau of Workers' Compensation ("BWC"), to vacate two orders. Specifically, relator challenges the BWC's determination reclassifying relator from Code 9620 to 7370 which resulted in an increase in relator's *Page 11 
premiums. Relator also challenges the BWC's denial of relator's application seeking the opportunity to be self-insured under Ohio's workers' compensation system.
Findings of Fact: {¶ 26} 1. The BWC performed an audit of relator for the period July 1, 2001 through June 30, 2003 to determine whether relator's classification for purposes of determining workers' compensation premiums was correct.
 {¶ 27} 2. Relator is an ambulette and ambulance service company which is not operated by a hospital. Relator provides emergency and other transportation services 24 hours per day. Relator has four divisions:
 • Division 1 includes paramedics and EMT's who transport individuals and administer medical care.
 • Division 2 provides wheelchair transport (take individuals to physician appointments, dialysis and etc.).
 • Division 3 provides mobile x-ray services primarily at nursing homes.
 • Division 4 provides mobile vascular services (vein scans, ultrasounds and etc.).
 {¶ 28} 3. The BWC is required to classify occupations or industries with respect to the degree of hazard and determine the risks of the different classes according to the category established by the National Counsel on Compensation Insurance ("NCCI").
 {¶ 29} 4. Relator had been classified under NCCI Code 9620 which applies to funeral directors and drivers and cross-references crematory operations and drivers, undertakers and drivers. The scope of Code 9620 states:
 * * * [E]ncompasses all operations of a funeral director other than employees qualifying for the Standard Exceptions classifications Clerical Office Employees and Salespersons, *Page 12 
who would be separately rated. Drivers are included within the scope of Code 9620 inasmuch as the operation of vehicles such as hearses, flower cars, limousines, etc., is considered an integral function in the services provided by a funeral director. Frequently, their drivers also have other duties in connection with the operations of funeral establish-ments so that there would necessarily be an interchange of labor. Organists, singers and other musicians who are employed by the funeral director are also included within the scope of Code 9620. Unless conducted as a separate business or enterprise, the drivers of ambulances employed by the funeral director would be classified as Code 9620.
 Embalmers and crematory employees would fall within the scope of this classification.
(Emphasis sic.)
 {¶ 30} 5. Following the BWC's audit, relator was reclassified under NCCI Code 7370 which applies to taxi-cab companies and cross-references employees and drivers of ambulance service companies and limousine companies. The cross-reference "also applies to ambulance service companies which are not operated by hospitals."
 {¶ 31} 6. After relator received notification that its classification was being changed, relator appealed.
 {¶ 32} 7. Relator's audit protest came before the adjudicating committee of the BWC on August 23, 2005. Ultimately, relator's appeal was denied and the adjudicating committee's decision transferring relator's payroll from Code 9620 to 7370 was affirmed by the administrator's designee.
 {¶ 33} 8. On May 5, 2005, relator filed an application with the BWC seeking the opportunity to be self-insured under Ohio's workers' compensation system.
 {¶ 34} 9. Relator submitted a risk analysis worksheet prepared by Donald J. Kersey with its application. Mr. Kersey concluded that relator had a Z score of 2.79764. *Page 13 
According to the worksheet, the relevance of the Z score would be described as "[s]afe if greater than 2.60[,] [b]ankrupt if less than 1.10."
 {¶ 35} 10. By letter dated July 6, 2005, relator was informed that its application was denied for the following reasons:
 • Loan covenant violations
 • Erratic cash flow from operations/Negative position for the year ending December 31, 2004
 • Capitalization concerns with most of assets comprised of accounts receivables
 {¶ 36} 11. Relator appealed the determination of the Self-Insured Department to the Self-Insured Review Panel ("SIRP"), pursuant to Ohio Adm. Code 4123-19-14. In support of its appeal, relator attached the following:
 1. Sky bank waiver of covenant and change of covenant
 2. Excess coverage application/proposal
 3. Self insurance (health) claims paid and TPA costs, including excess insurance
 4. Retrospective rating approval
 {¶ 37} 12. The wavier from Sky Bank covered relator's covenant violation for the fiscal year ending December 31, 2004, concerning loans, acquisitions, and guarantees. Sky Bank indicated that this waiver did not warrant that the bank would waive any other covenant violations in future years. With regard to the proposal for excess workers' compensation coverage, relator approached seven markets and received a quote from one of those, Midwest Employers Casualty. Of the other six markets approached, AIG did not give a quote as it would be noncompetitive, and Safety National, CNA, ERC, St. *Page 14 
Paul Travelers, and Hartford each declined to provide a quote due to the concentration of risk.
 {¶ 38} 13. Following a hearing, relator's appeal was denied. The order from the SIRP provides, in pertinent part:
 At the conference, the employer's representatives addressed each of the issues raised by the Self-Insured Underwriting Department. The Panel was informed that there was one loan covenant violation, which arose following a loan from MedCorp to a related entity with common ownership. This loan exceeded limitations, but the bank provided the company with a waiver of this covenant. The representatives acknowledged reporting negative cash flow from operations during calendar year 2004. This was attributed to an increase in sales over the previous year, resulting in timing issues in collecting from customers. The Panel was provided with a chart documenting the organization's cash flows, reflecting increasing cash flows from operations. The representatives expressed a willingness to provide BWC with a letter of credit as additional security in order to alleviate any concerns regarding the employer's financial ability to operate a self-insuring workers' compensation program.
 After a review of the information presented at the con-ference, as well as a review of the employer's most recent financial information, the Panel acknowledges the em-ployer's position regarding its financial status. The Panel also acknowledges the various factors contributing to the concerns expressed by the Self-Insured Underwriting De-partment. However, the Panel continues to have concerns regarding the employer's financial stability. These concerns relate to a three-year declining trend in earnings and EBITDA, the significant fluctuation in sales over the past three years, and the relatively low level of net income in the most recent year. The Panel notes that between 2002 and 2004, net income decreased 88% and EBITDA decreased 77%.
 For these reasons, the Panel is not persuaded that the employer possesses the financial ability to operate a self-insured workers' compensation program, and finds that it was appropriate for the Self-Insured Department to deny the *Page 15 
employer's application for the privilege of self-insurance. The employer's appeal is denied.
 {¶ 39} 14. Relator appealed the SIRP's order and, on June 15, 2006, the administrator's designee issued an order denying relator's further appeal as follows:
 The Administrator's Designee met with the employer's representatives, and has reviewed and considered the information provided by the employer in support of this appeal. The Administrator's Designee notes the concerns expressed in the order of the Self-Insured Review Panel relating to declines in earnings and EBITDA, fluctuations in sales, and the relatively low level of net income. The Administrator's Designee finds that it was appropriate for the Self-Insured Review Panel to deny the employer's applica-tion for the privilege of operating a self-insuring workers' compensation program. The Administrator's Designee therefore upholds the Panel's order, and denies the employer's appeal.
 {¶ 40} 15. Thereafter, relator filed the instant mandamus action challenging both orders: the BWC's order reclassifying relator and the order denying relator's application for self-insured status.
Conclusions of Law: {¶ 41} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse *Page 16 
of discretion and mandamus is not appropriate. State ex rel. Lewis v.Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v.Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 42} For the reasons that follow, it is this magistrate's conclusion that relator has failed to demonstrate an abuse of discretion with regards to both the decision regarding the reclassification and the determination denying relator's request for self-insured status.
 {¶ 43} R.C. 4123.29 provides, in part:
 (A) The administrator of workers' compensation, subject to the approval of the workers' compensation oversight commission, shall do all of the following:
 (1) Classify occupations or industries with respect to their degree of hazard and determine the risks of the different classes according to the categories the national council on compensation insurance establishes that are applicable to employers in this state;
 (2) Fix the rates of premium of the risks of the classes * * *
 {¶ 44} Supplementing R.C. 4123.29 is Ohio Adm. Code 4123-17-08 which provides, in part:
 In accordance with division (A)(1) of section 4123.29 of the Revised Code, the purpose of this rule is for the bureau of workers' compensation to conform the classifications of industries according to the categories the National Council on Compensation Insurance (NCCI) establishes that are applicable to employers in Ohio. * * *
 (A) Classification system.
 (1) The purpose of the classification system is to group employers with similar operations into classifications so that: *Page 17 
 (a) The assigned classification reflects the exposures common to those employers.
 (b) The rate charged reflects the exposure to loss common to those employers.
 {¶ 45} In State ex rel. Progressive Sweeping Contrs., Inc. v. OhioBur. of Workers' Comp. (1994), 68 Ohio St.3d 393, 395-396, Progressive Sweeping filed a mandamus action after it was reclassified. The Supreme Court of Ohio considered the BWC's authority and stated, in pertinent part:
 * * * The bureau must "classify occupations or industries with respect to their degree of hazard[.]" R.C. 4123.29(A)(1); State ex rel. Minutemen, Inc. v. Indus. Comm. (1991), 62 Ohio St.3d 158 * * *.
 In examining [Progressive Sweeping]'s occupational classification, we are mindful of two points: (1) absolute precision in occupational classification is often impossible, and (2) judicial deference to respondents' occupational classification is required in all but the most extraordinary circumstances. As to the former, Professor Young explains:
 "Industry is used in the sense of occupation. Normally, it is a horizontal rather than a vertical categorization, that is, it is a particular activity rather than an entire process. Welding would be an industry for purposes of classifications as contrasted to the steel industry. Precision in this method of classification would result in an unmanageable number of categories; thus some classifications contain multiple occupations or industries." Young, Workmen's Compensa-tion Law of Ohio (2 Ed. 1971), Section 16.2.
 Recognizing this difficulty, we have generally deferred to the commission's expertise in premium matters:
 "The experience of men, expert in this department of investigation, whose reports are founded upon experience touching the various hazards of industries and occupations, should be given important consideration[.]" State ex rel. Reaugh Constr. Co. v. Indus. Comm. (1928), 119 Ohio St. 205, 209 * * * *Page 18 
 Judicial intervention in premium matters has traditionally been warranted only where classification has been arbitrary, capricious or discriminatory. Id.; Minutemen, supra. See, generally, 4 Larson, Workmen's Compensation Law (1990), Section 92.67. Given this high threshold, we have been — and will continue to be — reluctant to find an abuse of discretion merely because the employer's actual risk does not precisely correspond with the risk classification assigned.
(Emphasis sic.)
 {¶ 46} In the Progressive Sweeping case, the court ultimately determined Progressive Sweeping was entitled to a rate adjustment because the classification into which the BWC placed Progressive Sweeping did not remotely reflect the actual risk encountered.
 {¶ 47} The magistrate finds that the disparity present inProgressive Sweeping is not present here.
 {¶ 48} As noted previously, relator had previously been classified under Code 9620 pertaining to funeral directors and drivers. However, it is undisputed that relator was not in the business of transporting dead bodies. Further, to the extent that drivers encompassed under Code 9620 also drive flower cars and limousines, generally, these activities are not performed during emergencies.
 {¶ 49} Relator provides ambulance services on both an emergency and nonemergency basis. The BWC reclassified relator under Code 7370 which pertains to taxi-cab companies and specifically cross-references ambulance service companies. In fact, it is noted that Code 7370 specifically applies to ambulance service companies which are not operated by hospitals. *Page 19 
 {¶ 50} In the present case, the magistrate finds that relator has not demonstrated the BWC abused its discretion when it reclassified relator and this court should deny relator's request for a writ of mandamus in this regard.
 {¶ 51} Relator also contends that the BWC abused its discretion when it denied relator's application for self-insured status.
 {¶ 52} R.C. 4123.53 provides, in pertinent part:
 (A) Except as provided * * * every employer mentioned in division (B)(2) of section 4123.01
[,] * * * shall pay semi-annually * * * into the state insurance fund the amount of annual premium the administrator of workers' compensation fixes for the employment or occupation of the employer * * *
 * * *
 The administrator shall adopt rules to permit employers to make periodic payments of the semiannual premium due under this division. * * *
 * * *
 (B) Employers who will abide by the rules of the admin-istrator and who may be of sufficient financial ability to render certain the payment of compensation to injured employees or the dependents of killed employees, and the furnishing of medical, surgical, nursing, and hospital attention and services and medicines, and funeral expenses, equal to or greater than is provided for in section 4123.52, 4123.55 to 4123.62, and 4123.64 to 4123.67 of the Revised Code, and who do not desire to insure the payment thereof or indemnify themselves against loss sustained by the direct payment thereof, upon a finding of such facts by the administrator, may be granted the privilege to pay individually compensation * * *.
 All employers granted status as self-insuring employers shall demonstrate sufficient financial and administrative ability to assure that all obligations under this section are promptly met. The administrator shall deny the privilege where the employer is unable to demonstrate the employer's ability to promptly *Page 20 
meet all the obligations imposed on the employer by this section.
 (1) The administrator shall consider, but is not limited to, the following factors, where applicable, in determining the employer's ability to meet all of the obligations imposed on the employer by this section:
 (a) The employer employs a minimum of five hundred employees in this state;
 (b) The employer has operated in this state for a minimum of two years * * *;
 * * *
 (d) The sufficiency of the employer's assets located in this state to insure the employer's solvency in paying compensation directly;
 (e) The financial records, documents, and data, certified by a certified public accountant, necessary to provide the employer's full financial disclosure[,] * * * balance sheets and profit and loss history for the current year and previous four years.
 (f) The employer's organizational plan for the administration of the workers' compensation law;
 (g) The employer's proposed plan to inform employees of the change from a state fund insurer to a self-insuring employer, the procedures the employer will follow as a self-insuring employer, and the employees' rights to compensation and benefits; and
 (h) The employer has either an account in a financial institution in this state, or if the employer maintains an account with a financial institution outside this state, ensures that workers' compensation checks are drawn from the same account as payroll checks or the employer clearly indicates that payment will be honored by a financial institution in this state.
 * * * *Page 21 
 (D) The administrator shall require a surety bond from all self-insuring employers * * * sufficient to compel, or secure to injured employees, or to the dependents of employees killed, the payment of compensation and expenses * * *.
 (E) In addition to the requirements of this section, the administrator shall make and publish rules governing the manner of making application and the nature and extent of the proof required to justify a finding of fact by the administrator as to granting the status of a self-insuring employer, which rules shall be general in their application, one of which rules shall provide that all self-insuring employers shall pay into the state insurance fund such amounts as are required to be credited to the surplus fund in division (B) of section 4123.34 of the Revised Code. The administrator may adopt rules establishing requirements in addition to the requirements described in division (B)(2) of this section that a public employer shall meet in order to qualify for self-insuring status.
 * * *
 (F) * * * If the bureau determines not to grant the status as a self-insuring employer, the bureau shall notify the employer * * *. The administrator also shall adopt rules establishing a minimum level of performance as a criterion for granting and maintaining the status as a self-insuring employer and fixing time limits beyond which failure of the self-insuring employer to provide for the necessary medical examinations and evaluations may not delay a decision on a claim.
 (G) The administrator shall adopt rules setting forth procedures for auditing the program of self-insuring employers. * * *
 * * *
 (H) * * * [T]he administrator may subscribe to and pay for a credit reporting service that offers financial and other business information about individual employers. * * * [C]osts * * * may be included in the application fee charged employers under this section.
(Emphasis added.) *Page 22 
 {¶ 53} Ohio Adm. Code 4123-19-03 supplements R.C. 4123.35 and provides, in relevant part:
 (A) All employers granted the privilege to pay compensation directly shall demonstrate sufficient financial strength and administrative ability to assure that all obligations under section 4123.35 of the Revised Code will be met promptly. The administrator of workers' compensation shall deny the privilege to pay compensation, etc., directly, where the employer is unable to demonstrate its ability to promptly meet all the obligations under the rules of the commission and bureau and section 4123.35 of the Revised Code. The administrator shall consider, but shall not be limited to the factors in divisions (B)(1) and (B)(2) of section 4123.35 of the Revised Code where they are applicable in determining the employer's ability to meet all obligations under section 4123.35 of the Revised Code.
 The administrator shall review all financial records, documents, and data necessary to provide a full financial disclosure of the employer * * * including but not limited to, the balance sheets and a profit and loss history for the current year and the previous four years. * * *
 * * *
 [D](2) If the administrator determines not to grant the privilege of self-insurance, the bureau shall so notify the employer, whereupon the employer shall be required to continue to pay its full premium into the state insurance fund.
 * * *
 (K) Minimal level of performance as a criterion for granting and maintaining the privilege to pay compensation directly.
 (1) The employer must be able to furnish or make arrangements for reasonable medical services during all working hours. A written explanation of what arrangements have been made or will be made to provide medical treatment shall be supplied with the application for self-insurance. *Page 23 
 {¶ 54} Relator contends that the evidence it provided warranted the granting of its application for self-insured status. Specifically, relator contends that it undeniably met all the requirements of R.C. 4123.35(B)(1) and further, that the risk analysis worksheet provided by Mr. Kersey established that relator met all the requirements and, therefore, the BWC should have granted its application.
 {¶ 55} Employers in the state of Ohio do not have a right to be self-insured. Instead, self-insurance is a privilege given to those employers deemed fully able to meet the requisite responsibilities. As noted previously, R.C. 4123.35(B) expressly provides:
 Employers who will abide by the rules of the administrator and who may be of sufficient financial ability to render certain the payment of compensation to injured employees or the dependents of killed employees, and the furnishing of medical, surgical, nursing, and hospital attention and services and medicines, and funeral expenses, equal to or greater than is provided for in sections 4123.52, 4123.55 to 4123.62, and 4123.64 to 4123.67 of the Revised Code, and who do not desire to insure the payment thereof or indemnify themselves against loss sustained by the direct payment thereof, upon a finding of such facts by the administrator, may be granted the privilege to pay individually compensa-tion, and furnish medical, surgical, nursing, and hospital services and attention and funeral expenses directly to injured employees or the dependents of killed employees, thereby being granted status as a self-insuring em-ployer. * * *
(Emphasis added.)
 {¶ 56} The Supreme Court of Ohio emphasized the nature of self-insurance in St. Paul Fire Marine Ins. Co. v. Indus. Comm.
(1987), 30 Ohio St.3d 17, 19, when the court stated: "We also emphasize the fact that this action involves the process of obtaining theprivilege of being a self-insured employer under Ohio's workers' compensation laws. See *Page 24 
R.C. 4123.35. * * * The legislature intended for self-insured status to be a `privilege.'" (Emphasis sic.)
 {¶ 57} As noted previously, relator argues that it presented sufficient evidence of its financial ability to meet the required obligations and that the BWC had no other choice but to grant its self-insured status.
 {¶ 58} Part of relator's argument is that the administrator has failed to promulgate rules which specifically delineate the criteria under which an employer will be granted self-insured status. Relator contends that the evidence it presented unquestionably established that it was financially responsible enough to meet the needs of its employees and that the BWC denied its application without following its own guidelines and that "the BWC was denying self-insurance applications if at all possible in order to maintain the premium base — in part to off-set the reduction of premium created by preferential treatment to certain employers * * * and also to maintain premium base in the light of a burgeoning workers' compensation scandal." (Relator's brief at 18.) Further, relator has submitted a Manual Override Special Audit prepared in October 2006 which, according to relator, clearly establishes that the BWC lacks written policies, procedures and system documentation and that the BWC does not even follow the rules it has in place.
 {¶ 59} None of relator's arguments demonstrate that relator has a clear legal right to have been granted self-insured status. Regardless of the fact that relator believes it sufficiently addressed all the issues which the BWC had, the fact remains that, in its discretion, the BWC determined that relator not be granted self-insured status. Contrary to relator's arguments, there are rules in the Ohio Administrative Code which the BWC followed in this case. Those rules clearly indicate that the BWC must consider certain *Page 25 
factors but that the BWC may consider any other factor which is applicable. R.C. 4123.53(B)(1)(a) through (h) and Ohio Adm. Code 4123-19-03(A) and (K)(1). Further, contrary to relator's argument, the BWC is not required to promulgate a rule establishing a checklist for the determination of granting self-insured status to employers. As with decisions regarding the allowance of claims and the payment of compensation, each situation is judged on a case-by-case basis and it would be impractical if not impossible to promulgate a set of hard and fast rules. The bottom line is that the BWC denied relator's application for self-insured status and set forth the reasoning for its decision. As such, the BWC followed the applicable law and relator has not demonstrated that it abused its discretion in denying relator's application for self-insured status.
 {¶ 60} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the BWC abused its discretion in reclassifying relator and in denying relator's application for self-insured status and this court should deny relator's request for a writ of mandamus.
 STEPHANIE BISCA BROOKS, MAGISTRATE *Page 1