[Cite as *PNP, Inc. v. Ohio Dept. of Job & Family Servs.*, 2013-Ohio-4344.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| PNP, Inc., dba Calcutta Health Care Center et al., | : | |
| | : | |
|        **Relators-Appellants/ Cross-Appellees,** | : | |
| | | No. 13AP-36 |
| v. | : | (C.P.C. No. 04CVH-03-2441) |
| | | |
| Ohio Department of Job & Family Services et al., | : | (REGULAR CALENDAR) |
| | : | |
|        **Respondents-Appellees/ Cross-Appellants.** | : | |

---

D E C I S I O N

Rendered on September 30, 2013

---

*Webster & Associates Co., LPA*, and *Geoffrey E. Webster*, for appellants/cross-appellees.

*Michael DeWine*, Attorney General, and *Rebecca L. Thomas*, for appellees/cross-appellants.

---

APPEAL from the Franklin County Court of Common Pleas.

SADLER, J.

{¶ 1} Relators-appellants/cross-appellees, PNP, Inc., dba Calcutta Health Care Center ("PNP"), BLCC, Inc. ("BLCC"), and Crestview Nursing and Rehabilitation Center, Inc. ("Crestview"), appeal from a Franklin County Court of Common Pleas entry of summary judgment in favor of respondents-appellees/cross-appellants, Ohio Department of Job & Family Services and Thomas Hayes, Director (collectively "ODJFS"). For the following reasons, we affirm the judgment of the trial court.

## I.  FACTUAL AND PROCEDURAL BACKGROUND[1]

{¶ 2}   Each of the appellants is an operator of a nursing home that participates in the federal Medicaid program as administered by ODJFS.  In Ohio, Medicaid-funded nursing homes are reimbursed for the reasonable costs of their services on a prospective basis.  In other words, ODJFS uses the amount of a prior period's allowable costs to calculate the reimbursement rate for a future period.  Due to the prospective nature of the reimbursement system, when ODJFS calculates the rates for a particular year, it cannot account for extraordinary or unexpected costs nursing homes incur during that year. *PNP, Inc. v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 04AP-1294, 2006-Ohio-1159, ¶ 2.

{¶ 3}   Starting October 22, 2001, the Ohio Department of Health increased the minimum nurse-to-patient staffing ratio that each appellant is required to maintain.  In order to comply with the new regulation, each appellant hired additional nursing staff.  However, as explained above, the prospectively-calculated reimbursement rates for fiscal years 2002 and 2003 did not account for the increased employment costs incurred.  Seeking to recoup these costs, appellants used the statutory remedy available to them— the rate reconsideration process.   On October 30, 2002, appellants filed rate reconsideration requests with ODJFS seeking additional reimbursement pursuant to R.C. 5111.27(F) and Ohio Adm.Code 5101:3-3-24.1 ("government mandate provisions"), as well as R.C. 5111.29 and Ohio Adm.Code 5101:3-3-24(C) ("extreme circumstances provisions").  R.C. 5111.27(F) and its corresponding rule, Ohio Adm.Code 5101:3-3-24.1, permit a Medicaid provider to request a rate adjustment to account for the reasonable additional costs the provider incurs in complying with the requirements of a government mandate.  R.C. 5111.29(A)(2) and its corresponding rule, Ohio Adm.Code 5101:3-3-24(C), permit a Medicaid provider to request a rate reconsideration to compensate it for actual, allowable costs that have increased because of extreme circumstances.

---

[1] The background of this litigation is taken in large part from this court's decision rendered in a prior appeal in this case, *PNP, Inc. v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 04AP-1294, 2006-Ohio-1159.

{¶ 4} In compliance with the process set forth in Ohio Adm.Code 5101:3-3-24.1 and 5101:3-3-24(C), each appellant provided ODJFS with documentation of the cost increases that resulted from their employment of additional nurses. PNP claimed it incurred a cost increase of $14.49 per patient per day, BLCC an increase of $14.69, and Crestview an increase of $12.77.

{¶ 5} ODJFS denied appellants' requests for a rate increase, pursuant to the government mandate provisions, because it found that the requests were untimely. ODJFS granted appellants' requests for a rate increase, pursuant to the extreme circumstances provision, but awarded only $2.75 more per patient per day to PNP, $2.12 to BLCC, and $5.43 to Crestview. None of the appellants were satisfied with their rate increase because, as they allege in their complaint, the increases did not adequately reimburse them for the reasonable costs they incurred in employing additional nurses. Thus, on March 30, 2004, appellants filed suit against ODJFS, alleging that ODJFS violated both state and federal laws by refusing to adequately reimburse them. Further, appellants asserted a breach of contract claim and a claim under Section 1983, Title 42, U.S.Code. Appellants requested that the trial court issue a declaratory judgment, provide them injunctive relief, and award them the reimbursement money they claimed ODJFS wrongfully withheld.

{¶ 6} On November 19, 2004, the trial court issued a decision and entry granting ODJFS' Civ.R. 12(B)(1) motion to dismiss for lack of subject-matter jurisdiction. Relying upon *Morning View Care Ctr.-Fulton v. Ohio Dept. of Job & Family Servs.*, 158 Ohio App.3d 689, 2004-Ohio-5436 (10th Dist.), and *Morning View Care Ctr.-Fulton v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 04AP-57, 2004-Ohio-6073, the trial court held that appellants' requests for declaratory judgment, injunctive relief, mandamus, and monetary damages were inextricably intertwined. Because the Court of Claims of Ohio is the sole forum available for actions seeking monetary damages against the state, even when such actions also include requests for equitable relief, the trial court held that the Court of Claims had jurisdiction over appellants' actions.

{¶ 7} In reversing the judgment of the trial court, this court held, "neither a declaratory judgment nor an injunction is available to review an agency's non-appealable discretionary decision. Rather, only mandamus will issue to correct an abuse of discretion

in administrative decisions not subject to appeal.  Because writs of mandamus may be granted by a court of common pleas, but not the Court of Claims, jurisdiction is proper in the court of common pleas."  *PNP* at ¶ 20.  Therefore, the trial court's judgment was affirmed in part and reversed in part, and the matter was remanded for further proceedings.

{¶ 8}  On remand, appellants amended their petition for a writ of mandamus several times.  At issue before us, at this juncture, is the third amended petition ("petition") filed on March 29, 2008.  Following this filing, appellants filed a motion for partial summary judgment, and appellees filed a motion to dismiss.  Via decision rendered on December 20, 2012, the trial court denied appellees' motion to dismiss, denied appellants' motion for partial summary judgment, and granted summary judgment to appellees, thereby denying the requested writ of mandamus.

## II.  ASSIGNMENTS OF ERROR

{¶ 9}  This appeal followed, and appellants bring the following two assignments of error for our review:

> [I.] The trial court erred in denying appellants' petition in mandamus.
>
> [II.] The trial court erred in granting summary judgment to a non-moving party.

## III.  CROSS-APPEAL

{¶ 10} Appellees filed a conditional cross-appeal, requesting that the following assignment of error be reviewed if this court reverses or vacates all or part of the trial court's judgment:

> The lower court incorrectly denied the Agency's motion to dismiss based on lack of jurisdiction and/or failure to state a claim upon which relief could be granted.

## IV.  DISCUSSION

### A.  First Assignment of Error

{¶ 11}  In their first assignment of error, appellants contend the trial court erred in denying their request for a writ of mandamus.

{¶ 12} The trial court denied appellants' motion for partial summary judgment and granted summary judgment in favor of appellees, thereby denying appellants' requested writ of mandamus. *See Todd Dev. Co., Inc. v. Morgan*, 116 Ohio St.3d 461, 2008-Ohio-87, ¶ 17 ("When a party moves for summary judgment, the nonmovant has an opportunity to respond, and the court has considered all the relevant evidence, the court may enter summary judgment against the moving party, despite the nonmoving party's failure to file its own motion for summary judgment."). "Summary judgment is appropriate when an examination of all relevant materials filed in the action reveals that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, ¶ 12, quoting Civ.R. 56(C). "In reviewing whether the trial court's granting of summary judgment was proper, we apply a de novo review." *Troyer v. Janis*, 132 Ohio St.3d 229, 2012-Ohio-2406, ¶ 6.

{¶ 13} Mandamus is the proper vehicle for relief where the true aim of a plaintiff's action is to correct an abuse of ODJFS' discretion in calculating a Medicaid reimbursement rate and to compel recalculation. *PNP* at ¶ 8. In order to be entitled to a writ of mandamus, a relator must establish a clear legal right to the relief sought, a clear legal duty on the part of the respondent to perform the requested act, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Bertaux v. State Teachers Retirement Sys. Bd.*, 10th Dist. No. 11AP-504, 2012-Ohio-5900, ¶ 6, citing *State ex rel. United Auto., Aerospace & Agricultural Implement Workers of Am. v. Bur. of Workers' Comp.*, 108 Ohio St.3d 432, 2006-Ohio-1327, ¶ 34; *State ex rel. Medcorp, Inc. v. Ryan*, 10th Dist. No. 06AP-1223, 2008-Ohio-2835, ¶ 8. Mandamus is an extraordinary remedy which is to be exercised with caution and issued only when the right is clear. *State ex rel. Rittner v. Bumb*, 6th Dist. No. F-07-017, 2007-Ohio-5319, ¶ 6. Mandamus will not issue in doubtful cases. *Id.*, citing *State ex rel. Taylor v. Glasser*, 50 Ohio St.2d 165, 166 (1977).

{¶ 14} According to appellants, ODJFS' decision not to grant their requests for rate reconsideration based on their increased costs due to a government mandate was an abuse of discretion, and, therefore, the trial court erred in denying their requested mandamus relief. We disagree.

{¶ 15} In their petition for mandamus relief, appellants state they filed rate reconsideration requests on October 30, 2002 pursuant to the administrative code rules

allowing rate adjustments due to government mandates and extreme circumstances. According to the petition, appellants "specifically requested an increase in [appellants'] Fiscal Year 2003 rates." (Petition, 5.) The petition alleged ODJFS denied their request, pursuant to a government mandate, and partially granted their request pursuant to extreme circumstances.

{¶ 16} Under Count I of the petition, appellants allege ODJFS "illegally, unlawfully, and unconstitutionally deprived [appellants] of the rate adjustment to which they are entitled pursuant to the request for rate reconsideration due to a Government Mandate or an Extreme Circumstance. [Appellants] have a clear legal right to be reimbursed the reasonable costs incurred in complying with the change in legal requirements for staffing the facilities." (Petition, 8.) Appellants assert they are entitled to a reasonable and adequate per diem rate adjustment for fiscal years 2002, 2003, and 2004 set forth in their rate reconsideration requests. Under Count II, appellants assert they are "entitled to a writ of mandamus directing the [appellees] to consider the change in staffing regulations to constitute a government mandate and to thereafter proceed to adjust and pay correct rates as a result of the government mandate." (Petition, 9.)

{¶ 17} Though the petition states appellants are entitled to mandamus relief pertaining to fiscal years 2002, 2003, and 2004, as the trial court concluded, the rate adjustment requests submitted to ODJFS on October 30, 2002 do not seek a rate adjustment for fiscal year 2004. The October 30, 2002 rate adjustment requests submitted by appellants state:

> [W]e request a rate increase * * * per patient per day effective July 1, 2002 through June 30, 2003. We understand that ODJFS may be interpreting OAC Rule 5101:3-3-24.1 [the government mandate provision] to apply to fiscal year 2002 only. However, neither OAC Rule 5101:3-3-24.1 nor the ODJFS instructions state that the rate reconsideration applies only to fiscal year 2002. Therefore, we request a rate increase under OAC Rule 5101:3-3-24.1. However, in the event that relief is not available under OAC Rule 5101:3-3-24.1, we request that a rate increase be granted under the extreme circumstance guidelines outlined in OAC 5101-3-3-24(C).

(Exhibits 1, 2, and 3 to motion for partial summary judgment.)

{¶ 18} Additionally, the petition for mandamus relief alleges appellants' October 30, 2002 requests "specifically requested an increase in [appellants'] Fiscal Year 2003 rates." (Petition, 5.) Based on the record, the trial court was correct to conclude appellants were not entitled to mandamus relief pertaining to fiscal year 2004.

{¶ 19} For this same reason, appellants are not entitled to mandamus relief pertaining to fiscal year 2002. Though the trial court denied mandamus relief for fiscal year 2002 on an alternative basis, we conclude the record lacks evidence indicating that appellants' rate adjustment requests sought rate adjustments for fiscal year 2002. Rather, the rate adjustment requests submitted by appellants sought rate adjustments only for fiscal year 2003. Because appellants failed to establish a clear legal right to the relief sought for fiscal years 2002 and 2004, mandamus relief was properly denied as to those years.

{¶ 20} Regarding the rate adjustment requests for fiscal year 2003, appellants' petition for mandamus relief lacks clarity. While the petition states appellants are entitled to the reasonable and adequate per diem rate adjustments set forth in their rate reconsideration requests, presumably due to both a government mandate and extreme circumstances, the only specific writ requested is one directing ODJFS to consider the change in staffing regulations as constituting a government mandate and, thereafter, proceed to adjust and pay correct rates as a result of the government mandate.

{¶ 21} The response to appellants' rate adjustment requests from ODJFS was as follows:

> We received the rate reconsideration requests for the above referenced facilities. Your initial request was filed as a government mandate related to the minimum staffing requirements. Any relief considered here is only for the amount required to come into compliance up to the minimum standards required. This requirement was effective October 1, 2001 (Fiscal 2002). Ohio Administrative Code Rule 5101:3-3-24.1(B)(b) stipulates the request must be filed before the end of the fiscal year in which the rate is to be paid. We believe this would be June 30, 2002, because this is the fiscal year the requirement was implemented. Although we understand these facilities were unable to comply and file three months of costs within Fiscal Year 2002, we will not grant any request for the minimum staffing under the government mandate

rule, because the request was received October 31, 2002, during fiscal 2003.

(Emphasis sic.)  (Exhibit 4, Motion for Partial Summary Judgment.)

{¶ 22} This evidence establishes ODJFS denied appellants' rate adjustment requests because they were untimely, not because it did not consider the change of nurse-to-patient ratio to constitute a government mandate.  Because the record reflects ODJFS did consider the nurse-to-patient ratio change to constitute a government mandate, we will construe appellants' petition as requesting a writ of mandamus ordering ODJFS to find their rate reconsideration requests due to a government mandate timely and award appellants their requested rate adjustments.  Additionally, though it does not appear to have been specifically requested, we construe appellants' petition for mandamus relief as requesting a writ of mandamus ordering ODJFS to recalculate the per diem rates awarded for extreme circumstances.

{¶ 23} Appellants first argue the increased staffing requirements amounted to a government mandate, and, therefore, their rates should have been adjusted accordingly.  As we have already pointed out, ODJFS does not dispute that these circumstances constituted a government mandate, nor were appellants' rate adjustment requests denied on this basis.  Rather, ODJFS determined appellants' rate adjustment requests were untimely.  Notwithstanding, appellants contend they "met every procedural and substantive standard" governing government mandate adjustments as required by former Ohio Adm.Code 5101:3-3-24.1.  Appellants also assert that, since they were required to submit 90-day cost reports, their requests should be considered timely filed even though they were not filed until fiscal year 2003.

{¶ 24} Though the government mandate went into effect on October 22, 2001, appellants did not come into compliance with the mandate until June 2002.  Because the Bureau of Long Term Care Facilities ("Bureau"), a subdivision of ODJFS, required providers to submit 90-day cost reports with rate adjustment requests, appellants assert the earliest they were able to file their requests was in October 2002.  As is relevant here, former Ohio Adm.Code 5101:3-3-24.1 provided:

> (C)  For government mandates which affect a specific class of
> NFs or ICFs-MR operating in the state of Ohio, the provisions

set forth under paragraph (C) of this rule shall apply.  For purposes of this rule, a "specific class of NFs or ICFs-MR" is a group of facilities with a common characteristic or set of characteristics that is the focus of the government mandate.

(1)  A rate adjustment shall be requested in accordance with the following procedures:

(a)  The request for a rate adjustment shall be filed in writing; and

(b)  The request for a rate adjustment shall be filed before the end of the fiscal year in which the rate is paid; and

(c)  The request for a rate adjustment shall be addressed to "Ohio Department of Jobs and Family Services, Ohio Health Plans, Bureau of Long Term Care Facilities, Reimbursement Section"; and

(d)  The request for a rate adjustment shall include appropriate documentation of the legal requirement necessitating the rate adjustment.  If the legal requirement is the result of a new federal or state statute or rule, a complete citation to the applicable provision or provisions shall constitute appropriate documentation of the legal requirement; and

(e)  The request for a rate adjustment shall include appropriate documentation of the costs that are incurred as a result of the government mandate.  This documentation shall detail actions to be taken in response to the government mandate, the relationship of these actions to the government mandate, and the costs of these actions.

(2)  A rate adjustment will not be granted if the additional costs to be incurred should have been incurred previously to comply with existing licensure and certification standards unless the facility can demonstrate a change in the on-going interpretation of the applicable standard; and

(3)  ODJFS shall respond in writing to each request for a rate adjustment pursuant to paragraph (C) of this rule within sixty days of the receipt of the written request.  If ODJFS requests additional information to determine whether a rate adjustment is warranted, ODJFS shall respond in writing

within sixty days of the receipt of the additional information; and

(4) The effective date of a rate adjustment pursuant to paragraph (C) of this rule shall be determined at the discretion of ODJFS.

{¶ 25} The instructions issued by the Bureau are titled "Instructions for Completion of Government Mandate ODH-<u>Minimum Daily Staffing 2.75 daily average</u> Fiscal Year 2002." The instructions expressly pertain to fiscal year 2002 and state that requests for rate adjustments based on actual costs incurred due to an increase in the minimum daily staffing must be filed in writing and before the end of the fiscal year in which the rate is paid. Thus, the instructions, in accordance with Ohio Adm.Code 5101:3-3-24.1, inform providers that to be eligible for a rate adjustment due to the government mandate effective October 1, 2001, providers had to submit such requests before the end of fiscal year 2002, which, undisputedly, appellants did not do. Therefore, even if appellants' rate adjustment requests due to government mandate had been requested, they would have been denied because they were not filed in fiscal year 2002. This, presumably, is why appellants' October 30, 2002 rate adjustment requests seek rate adjustments for only 2003.

{¶ 26} With respect to fiscal year 2003, Ohio Adm.Code 5101:3-3-24.1(C)(2), set forth above, states that a rate adjustment for a government mandate will not be granted if the additional costs to be incurred should have been incurred previously to comply with the existing standards unless the facility can demonstrate a change in the on-going interpretation of the applicable standard. The government mandate at issue here went into effect in October of fiscal year 2002; thus, providers would not be granted a rate adjustment based on the government mandate for additional costs incurred in subsequent years if the costs should have been incurred in fiscal year 2002, when the government mandate went into effect.

{¶ 27} Here, appellants came into compliance with the government mandate during the last month of fiscal year 2002, but, according to appellants, were unable to file their adjustment requests before October 2002 because the Bureau required 90-day cost reports. Even assuming appellants are correct in their assertion that they were not able to

file their requests in June 2002 because they lacked the requisite documentation, it cannot be ignored that the particular timing issue raised by appellant was created by appellants' lack of compliance with the government mandate until June 2002, eight months after it went into effect. While appellants take great issue with the prospective payment system, as it existed at the times relevant to this litigation, we conclude appellants have not established that they have a clear legal right to have their rates adjusted for fiscal year 2003, pursuant to the government mandate that went into effect in October of fiscal year 2002, particularly since the rules, as well as the instructions from the Bureau, expressly provided that such relief would not be granted.

{¶ 28} Next, under this assigned error, appellants contend the trial court erred in finding appellants were not entitled to a rate adjustment due to extreme circumstances. As previously discussed, PNP claimed it incurred a cost increase of $14.49 per patient per day, BLCC an increase of $14.69, and Crestview an increase of $12.77. ODJFS first granted a rate increase due to extreme circumstances in the amounts of $5.43, $5.43, and $5.79. ODJFS explained that rate adjustments, due to increases in hourly wages of current employees, could not be considered based on the Administrative Code rules and that only incurred costs for newly hired staff and additional costs for current employees, due to an increase in hours worked or shift differential to meet compliance with the government mandate, could be submitted. Thereafter, ODJFS corrected their calculations and informed appellants the rate adjustments would be $2.75, $5.43, and $2.12. ODJFS explained this recalculation was done because their initial calculations failed to account for efficiency incentives as required by the Administrative Code.

{¶ 29} Appellants assert that, in denying them mandamus relief, the trial court was of the opinion that appellants "should be happy with anything they get." (Brief at 17.) It appears that appellants' position on appeal is that whether efficiency incentives and equity offsets are to be applied before or after the determination of the additional per diem rate was the issue before the trial court that it failed to decide. While ODJFS determined the offsets were to be applied after the determination of the additional rates, appellants argue the offsets are to be applied prior to the determination of such rates. This, however, is a mandamus action; thus, the issue is whether appellants provided

evidence that they have a clear legal right to have their rate adjustments, due to extreme circumstances, calculated in a manner different from that used by ODJFS.

{¶ 30} We find appellants' arguments on appeal curious given that their petition for mandamus relief contains no allegation that their rate adjustments for extreme circumstances were in error due to ODJFS' failure to correctly consider efficiency incentives and equity offsets. Additionally, appellants' motion for partial summary judgment filed in the trial court fails to make any mention of appellants seeking a writ of mandamus to correct the rate adjustments awarded for extreme circumstances as said motion focuses solely on a writ of mandamus pertaining to the government mandate. Finally, other than making the conclusory assertion to this court on appeal that ODJFS misapplied offsets when it awarded rate adjustments for extreme circumstances, appellants provide no argument as to why ODJFS' interpretation of the rule is incorrect and/or why appellants' interpretation of the rules should govern.

{¶ 31} Accordingly, we conclude appellants have failed to establish that they have a clear legal right to a writ of mandamus ordering ODJFS to recalculate the rate adjustments awarded for extreme circumstances.

{¶ 32} For the foregoing reasons, we conclude the trial court did not err in denying appellants' petition seeking a writ of mandamus and overrule appellants' first assignment of error.

### B. Second Assignment of Error

{¶ 33} In the second assignment of error, appellants argue the trial court erred in granting summary judgment to a non-moving party. In *Marshall v. Aaron*, 15 Ohio St.3d 48 (1984), syllabus, the Supreme Court of Ohio stated that "Civ.R. 56 does not authorize courts to enter summary judgment in favor of a non-moving party." The court reached its conclusion in *Marshall* based upon the implications of the language of Civ.R. 56(C) and stated that "[w]here no motion has been filed, and necessarily no evidence attached thereto, no conclusion, favorable or adverse, is properly available upon which to base an order for summary judgment." *Id.* at 50. In *Todd Dev. Co.*, the Supreme Court recognized the well-established exception to this general prohibition: " ' "While Civ.R. 56 does not ordinarily authorize courts to enter summary judgment in favor of a non-moving party, * * * an entry of summary judgment against the moving party does not prejudice his

due process rights where all relevant evidence is before the court, no genuine issue as to any material fact exists, and the non-moving party is entitled to judgment as a matter of law." ' " *Id.* at ¶ 16, quoting *State ex rel. J.J. Detweiler Ents., Inc. v. Warner*, 103 Ohio St.3d 99, 2004-Ohio-4659, ¶ 13, quoting *State ex rel. Cuyahoga Cty. Hosp. v. Ohio Bur. of Workers' Comp.*, 27 Ohio St.3d 25, 28 (1986).

{¶ 34} As we have concluded in our disposition of appellants' first assignment of error, the record fails to establish appellants have a clear legal right to the relief sought in their petition for mandamus relief. As such, the entry of summary judgment in favor of appellees did not prejudice appellants' due process rights.

{¶ 35} Accordingly, we overrule appellants' second assignment of error.

## V. CONCLUSION

{¶ 36} Having overruled both of appellants' assignments of error, appellees' conditional cross-appeal is rendered moot, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

KLATT, P.J., and McCORMAC, J., concur.

McCORMAC, J., retired, formerly of the Tenth Appellate District, assigned to active duty under authority of the Ohio Constitution, Article IV, Section 6(C).

_____